## 37628. DEPARTMENT OF HUMAN RESOURCES v. MONTGOMERY.

GREGORY, Justice.

This case involves a construction of the Fair Employment Practices Act of 1978 (Code Ann. Ch. 89-17).[1] One of the stated purposes of the Act is: "To provide for execution within public employment in the State of the policies embodied in Title VII of the Federal Civil Rights Act of 1964 . . . as amended by the Equal Employment Opportunity Act of 1972 . . ." Code Ann. § 89-1702 (a)(1). The Act creates an Office of Fair Employment Practices and provides for the appointment by the Governor of an Administrator of the Office of Fair Employment Practices whose function is to discourage unlawful discrimination in public employment. Code Ann. §§ 89-1710, 89-1711.

An individual claiming to be aggrieved by an unlawful practice can file a complaint with the Administrator. Code Ann. § 89-1714 (a). If, after investigation of the complaint, the Administrator determines that there is reasonable cause to believe that the employer has engaged in an unlawful practice, the Administrator is directed to endeavor to eliminate the alleged unlawful practice by "conference, conciliation and persuasion." Code Ann. § 89-1714 (d). If he is unable to do so, the Administrator is directed to refer the complaint to a special master. Code Ann. § 89-1712 (a)(6). The special master, who must be a licensed attorney, and who is appointed by the Governor, is given "all of the power and authority granted to agencies in conducting hearings and rendering final orders under the Georgia Administrative Procedure Act [Title 3A], including, but not limited to, subpoena power." Code Ann. § 89-1715 (a).

Any party to a hearing before a special master may appeal an adverse final order of the special master to the superior court. Code Ann. § 89-1717. The Act states: "The court shall not substitute its judgment for that of the special master as to the weight of the evidence on questions of fact." Code Ann. § 89-1717 (b). However, the superior court may reverse or modify the order of the special master if the latter's "findings, inferences, conclusions, or decisions" are "[n]ot supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support said findings, inferences, conclusions or decisions." Code Ann. § 89-1717 (b)(5).

---

[1] The Act was originally scheduled to expire July 1, 1980. However, Acts 1980, p. 356, postponed the expiration until July 1, 1982.

Appellee, Rose L. Montgomery, is a twenty-six-year-old black female employed by the Northwest Georgia Regional Hospital in Rome. She filed a complaint with the Georgia Office of Fair Employment Practices, charging that appellant, the Georgia Department of Human Resources, (DOHR) had discriminated against her because of her race. See Code Ann. § 89-1703.

After investigation and attempts at conciliation, the matter was referred to a special master for a hearing. The special master found that unlawful discrimination had occurred and ordered remedial action. See Code Ann. § 89-1716 (c). DOHR appealed to the Superior Court of Fulton County which affirmed in part and reversed in part. Now DOHR appeals to this court.

(1) Appellant first contends the trial court erred in reviewing the final order of the special master using the "any evidence" rule.

The language of Code Ann. § 89-1717 (b)(5), supra, is virtually identical to language from federal cases interpreting the Federal Administrative Procedure Act. In Consolo v. Federal Maritime Comm., 383 U. S. 607 (86 SC 1018, 16 LE2d 131) (1966) the United States Supreme Court, after noting that the Administrative Procedure Act gives a reviewing court the authority to set aside agency findings found to be "unsupported by substantial evidence," defined substantial evidence as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .' " Id. at 620. The court went on to say that " '(I)t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " Ibid. In Georgia, the standard used to review the grant or denial of a directed verdict is the "any evidence" test. *Speir v. Williams,* 146 Ga. App. 880 (247 SE2d 549) (1978).

Furthermore, the language of § 89-1717 is similar to that contained in Code Ann. § 40-2207.1 (m) which says: "The court shall not substitute its judgment for that of the board as to the weight of the evidence . . . The court may reverse the decision or order of the board if . . . the board's findings, inferences, conclusions, decisions or orders are . . . Clearly erroneous in view of the reliable, probative and *substantial* evidence on the whole record . . ." (Emphasis supplied.) See also Code Ann. § 3A-120 (h). In *Hall v. Ault,* 240 Ga. 585 (242 SE2d 101) (1978), this court said that the above language "prevents a de novo determination of evidentiary questions leaving only a determination of whether the facts found by the board are supported by 'any evidence.' "

The same standard applies here and the trial court did not err in confining the scope of its review to the "any evidence" standard.

(2) Appellant contends the trial court erred in holding that the special master correctly applied the disparate treatment theory of discrimination and that the findings of the special master were supported by the evidence.

(a) The Fair Employment Practices Act of 1978 does not specify the elements necessary to establish or defend against a charge of discrimination and there are no previous Georgia cases construing the act. However, in view of the purposes of the act as stated in Code Ann. § 89-1702, reference to federal decisions interpreting Title VII of the Civil Rights Act of 1964 would be appropriate.

Discrimination can involve employment practices (such as standardized tests) that are facially neutral, but in fact fall more harshly on one group than another and cannot be justified as a business necessity. Griggs v. Duke Power Co., 401 U. S. 424 (91 SC 849, 28 LE2d 158) (1971). In this type of case the focus is on "disparate impact." See Teamsters v. United States, 431 U. S. 324, 335-336 (97 SC 1843, 52 LE2d 396) (1977) (fn. 15).

If the employer simply treats some employees less favorably than others because of their race, the focus is on "disparate treatment." Ibid. The alleged discrimination can involve one employee, as here, or can be a "pattern or practice" case like Teamsters. See Furnco Const. Corp. v. Waters, 438 U. S. 567, 575 (98 SC 2943, 57 LE2d 957) (1978) (fn. 7).

In *this* case the proper approach is the analysis contained in McDonnell Douglas Corp. v. Green, 411 U. S. 792 (93 SC 1817, 36 LE2d 668) (1972). A plaintiff can make out a prima facie claim of disparate treatment by showing

"(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U. S. at 802.[2]

Once plaintiff establishes a prima facie case, discriminatory intent may be inferred absent articulation of a legitimate, nondiscriminatory reason for the plaintiff's rejection. Furnco, supra.

(b) The special master's findings of fact included the following: Rose Montgomery is a black female who was employed as a House-

---

[2] The McDonnell court noted that the facts would necessarily vary in each case and that the above specifications of a prima facie proof would not necessariily be applicable in every aspect to differing factual situations.

keeper at the Northwest Regional Hospital, a facility of the Department of Human Resources. Two positions for Housekeeping Manager became available at the hospital. These two positions were previously held by two black females. They were filled by two white females. Ms. Montgomery was the first person to apply for the vacant positions. The hospital's Personnel Supervisor (whose duties included recruitment, setting up interviews, getting merit system certification, and general supervision of the office force) told Ms. Montgomery that the job description for the vacant positions required two years' supervisory experience. Another black applicant was given similar information. In fact, only one year of supervisory experience was required.

All together, eight people applied for the two positions. Their applications were sent from the personnel office to the merit system for certification as to qualifications. One was certified and the applicant, a white female, hired. Ms. Montgomery does not complain about this promotion. All the other applications were returned uncertified because the applicants lacked supervisory experience.

Ms. Montgomery submitted a second application which was also rejected. She then asked the Personnel Supervisor whether or not her work training CETA employees each summer would "count" as supervisory experience. She was told by the Personnel Supervisor that it would not. Ms. Montgomery at no time received assistance in preparing her application.

The first application of another white female had also been rejected but she sent in two additional applications on which she received assistance from the personnel office in the following respects: A supervisor for the hospital helped with spelling; another supervisor advised her to use her CETA supervision experience on her application; the Personnel Supervisor suggested that a third application could be submitted and then typed the third application in which the CETA experience appeared the first time. The third application was certified by the merit system and this applicant hired.

Ms. Montgomery was as qualified as, and in some respects more qualified than, the white applicant. The only substantial difference between the white applicant's application which was certified and her previous ones which were not, was the CETA experience listed only on the third application.

(c) There is evidence in the record to support the above findings of fact. There is also evidence in the record which would support contrary findings. However, ". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's [or a special master's] finding from being

supported by substantial evidence." Consolo, supra, 383 U. S. at 620. We agree with the trial court that findings of the special master were supported by the evidence.

(d) In applying these facts to the factors outlined in McDonnell, supra, it is clear that Ms. Montgomery made out a prima facie claim. She belongs to a racial minority, she applied and was qualified for a job for which the employer was seeking applicants. Despite her qualifications, she was rejected. After her rejection, the position remained open and the employer continued to seek applications from persons of Ms. Montgomery's qualifications.

The special master properly found that appellant failed to articulate a legitimate, nondiscriminatory reason for the rejection of Ms. Montgomery. Appellant claims that legitimate, non-discriminatory reasons were offered. We do find that appellant explained why the white applicant received assistance and Ms. Montgomery did not. See Board of Trustees v. Sweeney, 439 U. S. 24 (99 SC 295, 58 LE2d 216) (1978); Texas Dept. of Community Affairs v. Burdine, —— U. S. —— (101 SC 1089, —— LE2d ——) (1981). However, appellant has not explained why Ms. Montgomery was given false or misleading information about the job requirements, while the white applicant received correct information.

The trial court did not err in upholding the special master's finding of unlawful discrimination within the meaning of Code Ann. § 89-1703.

(3) Lastly, appellant claims the trial court erred in holding that the special master did not commit reversible error in failing to dismiss Ms. Montgomery's claim that she was retaliated against because she filed her discrimination charges.

The Georgia Office of Fair Employment Practices found reasonable cause to believe that Ms. Montgomery had been discriminated against, but failed to find reasonable cause to believe that she had subsequently been retaliated against.[3]

Appellant claims a finding of reasonable cause is a prerequisite to the special master's jurisdiction over an allegation of dis-crimination. See Code Ann. § 89-1712. However, we agree with the trial court that since the final decision of the special master did not include a finding of retaliation or findings of facts in support thereof, failure to dismiss the charge was harmless even if error.

---

[3] Subsequent to her charge of discrimination, Ms. Montgomery was promoted to a newly created position of Housekeeping Supervisor (a position with greater responsibility than that of Housekeeper but less than that of Housekeeping Manager).

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED NOVEMBER 13, 1981.

*Arthur K. Bolton, Attorney General, Vivian Davidson Egan, Assistant Attorney General,* for appellant.
*Robert Benham,* for appellee.