## 65607. GEORGIA BUREAU OF INVESTIGATION v. HEARD.

CARLEY, Judge.
Appellee is employed as a Special Agent by appellant and meets the objective qualifications for promotion to the position of Special Agent Principal. Although one of three black candidates was promoted to the position of Special Agent Principal in September of 1979, when appellee was not, he filed a charge of racial discrimination against appellant pursuant to the Fair Employment Practices Act of 1978, OCGA § 45-19-22 et seq. (Code Ann. § 89-1703 et seq.). A special master was appointed and a hearing was conducted. The special master found: That appellee had "established that the promotional practices of the [appellant] with respect to the Special Agent Principal category have a *disparate impact* on black agents employed by the Bureau" (R-82); that the appellant had "not established the *job performance validity* of its practices"; and, "therefore, that racial discrimination existed in the promotion board reviewing [appellee] for promotion to the Agent Principal position." (Emphasis supplied.) (R-84) The special master then ordered that appellee "be promoted to Special Agent Principal as of the effective date of promotion for all other agents selected in September of 1979." (R-83).
Appellant appealed the order of the special master to the superior court. The superior court affirmed the order and appellant

then petitioned this court for a discretionary appeal. Appellant's petition was granted in order that we might use the instant case as a means to interpret the Fair Employment Practices Act, a statute which the appellate courts have heretofore had little opportunity to consider.

1. Appellant asserts that the special master failed to apply the appropriate legal standards in evaluating the evidence presented in the hearing before him. On this basis, the appellant contends that the superior court erred in failing to reverse and remand the case back to the special master pursuant to OCGA § 45-19-39 (b) (Code Ann. § 89-1720).

"The Fair Employment Practices Act of 1978 does not specify the elements necessary to establish or defend against a charge of discrimination and there are no previous Georgia cases construing the act. However, in view of the purposes of the act as stated in [OCGA § 45-19-21], reference to federal decisions interpreting Title VII of the Civil Rights Act of 1964 would be appropriate.

"Discrimination can involve employment practices (such as standardized tests) that are facially neutral, but in fact fall more harshly on one group than another and cannot be justified as a business necessity. [Cits.] In this type of case the focus is on *'disparate impact.'* [Cit.]

"If the employer simply treats some employees less favorably than others because of their race, the focus is on *'disparate treatment.'* [Cit.] The alleged discrimination can involve one employee . . . or can be a 'pattern or practice' case . . . [Cit.]" (Emphasis supplied.) *Dept. of Human Resources v. Montgomery,* 248 Ga. 465, 467 (284 SE2d 263) (1981).

As noted above, Federal decisions interpreting Title VII of the Civil Rights Act of 1964 have consistently distinguished "disparate treatment" cases from cases involving facially neutral employment standards that have "disparate impact" on minority applicants. See generally United States Postal Service Bd. of Governors v. Aikens, —— U. S. —— (103 SC 1478, 75 LE2d 403) (1983) (fn. 1). It is clear that the special master considered the instant case as one involving "disparate impact." In such a case, all that the aggrieved employee need prove to establish a prima facie case of discrimination is that, regardless of intent to discriminate, the employer's otherwise facially neutral selection device screens out a disproportionate number of minorities. Once this is shown, the burden then shifts to the employer to demonstrate that, although it has discriminatory consequences, its facially neutral selection device is in fact job-related. See generally Grano v. Dept. of Development, 637 F2d 1073 (6th Cir. 1980). See also Griggs v. Duke Power Co., 401 U. S. 424 (91 SC 849, 28 LE2d 158)

(1971); Teamsters v. United States, 431 U. S. 324, 335-336 (97 SC 1843, 52 LE2d 396) (1977) (fn. 15). Thus, in the instant case the special master found that appellee had met his burden of proving the "disparate impact" of appellant's promotion practices upon blacks and that appellant had not in turn met the defensive burden under this theory of proving that its promotion practices were job-related. The special master made no finding with regard to appellant's discriminatory motive in refusing to promote appellee, as proof of such a discriminatory motive would not be necessary in a "disparate impact" case. See generally Teamsters v. United States, supra.

The special master erred in treating the instant case as one involving "disparate impact." Appellee did not allege, and the evidence did not show, a facially-neutral and objective promotion device (such as standardized tests) which, regardless of intent to discriminate, screens out a disproportionate number of minorities. Indeed, the special master specifically found that appellant's relevant promotion device consisted of a panel of supervisors who *subjectively* evaluated and rated each applicant's qualifications against a number of objective standards. It is clear that appellant's subjective decision-making promotional system is not such a "facially-neutral" employment practice prohibited by Griggs v. Duke Power Co., supra, so that the proof thereof — standing alone and without further evidence authorizing a finding of discriminatory intent — will establish a prima facie case of employment discrimination under the "discriminatory impact" theory and thereby shift the burden of proof to the employer. "To establish a prima facie case under the *Griggs* theory of disparate impact, an employee must, as a threshold matter, point to a facially-neutral employment practice or criteria that operates in a discriminatory manner. [Cit.] ... Nonobjective evaluation systems may be probative of intentional discrimination, especially when discriminatory patterns result, because such systems operate to conceal actual bias in decision making. [Cits.] *A subjective decision-making system, however, is not the type of practice outlawed under Griggs and cannot alone form the foundation for a discriminatory impact case.* [Cit.]" (Emphasis supplied.) Harris v. Ford Motor Co., 651 F2d 609, 611 (8th Cir. 1981). Appellee apparently did not allege, and the special master did not find, that the objective, facially-neutral standards and requirements established for the position of Special Agent Principal — such as length of service, etc. — impacted adversely on black applicants generally. What appellee did assert was that, in its subjective evaluation of whether he met those objective standards, appellant's promotion review panel discriminated on the basis of race. This asserted a claim of "disparate treatment" and not a claim

of "disparate impact." See generally Taylor v. Teletype Corp., 648 F2d 1129, 1132 (8th Cir. 1981) (fn. 6).

Whether appellee's charge is viewed as alleging discrimination solely against appellee (McDonnell Douglas Corp. v. Green, 411. U. S. 792 (93 SC 1817, 36 LE2d 668) (1973)) or a "pattern or practice" of discrimination against blacks generally (Teamsters v. United States, supra), appellee had the initial burden of proving "disparate treatment" regarding his promotion, including evidence probative of the "critical" element of a discriminatory motive in appellant's action. See generally Teamsters v. United States, supra at 335 (fn. 15). "The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. [Cit.]" Texas Dept. of Community Affairs v. Burdine, 450 U. S. 248, 253-254 (101 SC 1089, 67 LE2d 207) (1981).

"The existence of a prima facie case is most often gauged by the formula announced by the Supreme Court in McDonnell Douglas Corporation v. Green, [supra]. That formula requires the plaintiff to show (i) that he belongs to a racial minority, (ii) that he applied and was qualified for a job for which the employer was seeking applicants, (iii) that, despite his qualifications, he was rejected, and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. [Cit.] The proof offered must negate the possibility that the rejection was based on the applicant's lack of qualifications or the lack of an available position — two of the most common legitimate reasons for rejection." Johnson v. Gen. Tire & Rubber Co., 652 F2d 574, 576-577 (5th Cir. 1981). See also McDonnell Douglas Corp. v. Green, supra at 802; Texas Dept. of Community Affairs v. Burdine, supra at 252-253; *Dept. of Human Resources v. Montgomery,* supra at 467. "This, of course, was not intended to be an inflexible rule, as the Court went on to note that '[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.' [Cits.] But *McDonnell Douglas* did make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a

discriminatory criterion illegal under the Act.' [Cits.]" Furnco Constr. Corp. v. Waters, 438 U. S. 567, 575-576 (98 SC 2943, 57 LE2d 957) (1978). "We, therefore, hold that a prima facie case of failure to promote because of racial discrimination is made by showing: (i) that plaintiff belongs to a racial minority, (ii) that he was qualified for promotion and might have reasonably expected selection for promotion under the defendant's on-going competitive promotion system, (iii) that he was not promoted, and (iv) the supervisory level employees having responsibility to exercise judgment under the promotion system betrayed in other matters a predisposition towards discrimination against members of the involved minority." Pettit v. United States, 488 F2d 1026, 1033 (U. S. Ct. of Claims 1973). If the plaintiff meets his initial burden of proving a prima facie case of "disparate treatment," the burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminating reason." Texas Dept. of Community Affairs v. Burdine, supra at 254.

In the instant case, the special master made no proper findings concerning whether appellee was the victim of "disparate treatment" with regard to his refused promotion. Instead, the special master, erroneously focusing on the "disparate impact" of the subjective part of appellant's promotion procedure rather than the discriminatory motive behind the unsuccessful promotion application, found that a prima facie case of racial discrimination had been shown and that appellant had not rebutted that prima facie case by showing that its promotion procedure was justified by business necessity. As noted above, when dealing with subjective rather than facially-neutral and hence objective employment procedures, the case is to be treated as one involving "disparate treatment" wherein the plaintiff's prima facie case is shown by evidence that the subjective decision to deny him a promotion was racially motivated and the defendant's rebuttal evidence relates to defending his subjective decision in that regard as having been based upon legitimate, nondiscriminatory reasons.

Once all the evidence is adduced, the trier of fact will then be "in a position to decide the ultimate factual issue in the case[,] . . . 'whether the defendant intentionally discriminated against the plaintiff.' [Cit.]" U. S. Postal Service Bd. of Govs. v. Aikens, 103 SC, supra at 1482.

The order demonstrates that the case was decided on an erroneous legal theory, disparate impact rather than disparate treatment. Compare, U. S. Postal Service Bd. of Govs. v. Aikens, supra. Accordingly, the judgment in the instant case affirming the order of the special master is reversed with direction that the case be

remanded to the special master for further proceedings not inconsistent with this opinion.

2. Resolution of the instant appeal for the reasons discussed in Division 1 of this opinion renders it unnecessary to consider appellant's remaining enumerations of error.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED JUNE 15, 1983.

*Michael J. Bowers, Attorney General, Robert S. Stubbs II, Executive Assistant Attorney General, Marion O. Gordon, John C. Walden, Senior Assistant Attorneys General, Susan V. Boleyn, Assistant Attorney General, Victoria H. Soto, Staff Assistant Attorney General,* for appellant.

*David L. G. King, Jr., Jewell G. Saunders,* for appellee.