A98A0179. UNITED STATES FIDELITY & GUARANTY COMPANY, INC. v. PAUL ASSOCIATES, INC. et al.
A98A0180. MIC ENTERPRISE et al. v. PAUL ASSOCIATES, INC. et al.
A98A0181. PAUL ASSOCIATES, INC. et al. v. UNITED STATES FIDELITY & GUARANTY COMPANY, INC.
(496 SE2d 283)

ELDRIDGE, Judge.

Defendants-appellees and cross-appellants Paul Associates, Inc. ("Paul") is the insurance agency of Claude Paul II. MIC Enterprise is a company operated by Michael Basile, Cynthia Basile, and Michael Coleman, who are also defendants-appellees and cross-appellants. Coleman and Cynthia Basile went to Paul to obtain workers' compensation insurance coverage. Paul submitted an application through the Georgia Workers' Compensation Insurance Plan (the assigned risk pool) to obtain coverage. Under the plan, the National Council on Compensation-Insurance Southern Division ("NCCI") made an assignment of the coverage to plaintiff-appellant and cross-appellee United States Fidelity & Guaranty Company, Inc. ("USF&G") as carrier. Both USF&G and NCCI processed the application based upon the information contained in the application.

The policy of workers' compensation insurance was issued by USF&G to MIC for one year. After the policy was issued, USF&G discovered that the application contained numerous, significant false statements. The very basis for qualification and assignment under the plan was that MIC had been rejected in writing by four separate workers' compensation insurance carriers; however, MIC had never applied for nor been rejected previously for coverage.

USF&G sued all the defendants for negligent misrepresentations. Also, USF&G sued MIC and the principals, the Basiles and Coleman, for breach of contract and personal liability for MIC's debts and liabilities.

Prior to trial, Paul filed a motion in limine to exclude any evidence which showed that Paul had previously filed similar applications for other insureds under the plan that did not qualify, but that he had represented did qualify. USF&G proffered evidence that, as he had done with MIC, Paul previously had submitted similar applications for two other insureds that had not been rejected by four carriers. USF&G argued that this was impeaching evidence which showed habit or custom of Paul in submitting erroneous applications.

The trial court granted Paul's motion in limine, keeping out this evidence.

At trial, Coleman directly contradicted Paul's testimony by testifying that MIC had never applied for nor been rejected for workers' compensation insurance and that neither he nor Cynthia Basile ever told Paul that MIC had been rejected.

While Paul testified in deposition testimony that he could not remember how he came up with the names of the insurance companies listed on the application as having previously rejected MIC's application, at trial Paul testified that Coleman and Cynthia Basile had given him such information. On cross-examination, Paul testified that he "always" got the information by telephone for the application from the insured; that his usual practice and procedure in filling out insurance applications was to take the information regarding rejections from the applicants over the telephone; and that he got such information from MIC in this way and that he remembered this after the deposition. USF&G sought permission from the trial court to use the previously excluded similar cases to impeach Paul about how he "always" handled information regarding rejection; however, the trial court denied such permission.

The jury returned verdicts for MIC on the breach of contract claim; USF&G received a verdict of $133,363 for breach of contract against Coleman and the Basiles, to be apportioned equally; USF&G received a verdict for negligent misrepresentation against Coleman, the Basiles, and Claude Paul II, in the total amount of $24,300, apportioned as follows: $9,000 against Paul and $5,000 against each of the other individuals; defendants' claim for contribution from third-party defendants was denied; USF&G received expenses of litigation of $15,000 against Coleman, and against each of the Basiles, totaling $45,000. Judgment was entered upon the verdict on October 10, 1996.

USF&G filed a motion for new trial and alternatively, a motion notwithstanding the verdict. The motion for new trial was denied, but the trial court granted the judgment n.o.v. against MIC on the breach of contract claim in the amount of $133,363 on February 4, 1997. The parties filed their respective notices of appeal or cross-appeal.

### Case No. A98A0179

1. USF&G's first and second enumerations of error involve the same issue: whether the trial court erred in not allowing it to either cross-examine Paul on prior similar applications for other insureds for purposes of impeachment or in granting the motion in limine to the same effect. This asserted error was harmless error.

To the extent that the trial court's exclusion of the prior similar acts, either for impeachment or to prove habit, was error, such error was harmless, because USF&G received a verdict from the jury as to all defendants, and the evidence, if admissible, had relevance to the issue of liability and not of damages. "Inasmuch as appellant['s] counsel's question was only relevant to the question of liability, even if it [was] error to disallow it, the trial court's ruling was harmless since a verdict was rendered for the appellant." *Gurly v. Hinson*, 194 Ga. App. 673 (1) (391 SE2d 483) (1990); see also *Robinson v. Murray*, 198 Ga. 690 (2) (32 SE2d 496) (1944); *American Alloy Steel v. Bearings & Drives*, 188 Ga. App. 792 (374 SE2d 570) (1988); *Maloy v. Dixon*, 127 Ga. App. 151 (2) (193 SE2d 19) (1972).

2. The third enumeration of error is that "the trial court erred in failing to charge the jury that an insurer may rely on representations in an insurance application as true without conducting an independent investigation." We do not agree.

USF&G's charge was taken from a case decided on summary judgment to cancel a fire insurance policy for misrepresentations on the application. In addition to the portion in the requested charge, this Court held as follows: "Although [the insurer] relies on OCGA § 33-24-6 (c) to support this position, this Code section applies only to statements involving applications for life or accident and sickness insurance. See, e.g., *Fidelity Bankers Life Ins. Co. v. Renew*, 121 Ga. App. 883, 884 (2) (176 SE2d 103) (1970). However, OCGA § 33-24-7 (a) provides that statements in applications are 'representations' and subsection (b) states the circumstances under which an insurer can avoid the policy for '(m)isrepresentations, omissions, concealment of facts, and incorrect statements.' [(Emphasis omitted.)] Thus it is implicit that *an insurer is entitled to rely on statements of an applicant as true, without conducting an independent investigation*. Of course, it assumes a risk, because recovery on policies issued on such representations is prevented only in the three instances in the statute. The burden on the insurer is to prove one of them." (Emphasis supplied.) *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 432 (2) (469 SE2d 199) (1995). This language of the charge has been taken out of context from a fire insurance contract coverage case and it is not an accurate and complete statement of the applicable law in this workers' compensation insurance case for the collection of premiums in a breach of contract and negligent misrepresentation action. Any charge to such effect under these facts and circumstances should be based on OCGA § 34-9-133, which mandates coverage when an assignment is made under the assigned risk plan.

"In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citation

and punctuation omitted.) *Heffernan v. Home Depot U.S.A.*, 226 Ga. App. 167, 168 (2) (486 SE2d 51) (1997); *Lee v. Bartusek*, 205 Ga. App. 551 (422 SE2d 570) (1992). "Although the language used by appellate courts in a decision may embody sound law, it is not always proper to employ such language in a charge to the jury. *Department of Transp. v. Hillside Motors*, 192 Ga. App. 637, 640 (3) (385 SE2d 746) [(1989)]." *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 126 (3) (419 SE2d 48) (1992). "A request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If *any portion* of the request is inapt or incorrect, denial of the request is proper." (Citations and punctuation omitted; emphasis in original.) *Mattox v. MARTA*, 200 Ga. App. 697, 699 (4) (409 SE2d 267) (1991); accord *Continental*, supra at 126-127. The trial court did not err in rejecting the request to charge.

3. The fourth enumeration of error is that the trial court erred "in charging the jury as to USF&G's negligence by giving third party defendants' requests to charge nos. 5 and 6, and the supplemental charge regarding OCGA § 51-12-33 relating to contributory and comparative negligence." We do not agree.

USF&G brought this action against the defendants for negligent misrepresentation, not to avoid coverage, but to obtain damages flowing from the tort; therefore, tort defenses, either in avoidance or in mitigation, were applicable.

USF&G, by being licensed to sell workers' compensation insurance, bound itself to accept a certain number of assigned risk coverage cases through the assigned risk plan. OCGA § 34-9-133. USF&G had no right to reject or question an assigned application that on its face met the criteria under the statute and was tendered to the insurer by the Workers' Compensation Board or an authorized agency to administer the plan. Thus, under the facts and circumstances of this case, USF&G could not be negligent by accepting the *mandatory* assignment through the plan without making an investigation. The insurer was not acting under normal business practice where ordinary care applied, but under the mandates of law and insurance, as well as workers' compensation regulations.

However, while USF&G may have had no duty to investigate the application prior to issuance of the policy under OCGA § 34-9-133, so that the negligent misrepresentation could not be avoided *prior* to the issuance of the policy, under OCGA § 33-24-7 USF&G assumed the risk of not being able to prove one of the three grounds to nullify a policy. *Graphic Arts*, supra.

Further, USF&G had a duty to protect itself from additional damages or injury once the negligent misrepresentation was made and should have been discovered and to seek to limit further damages that proximately flowed from such original wrongful acts.

USF&G's damages commenced upon the issuance of the policy through the negligent misrepresentations that the requirements of OCGA § 34-9-133 had been met. While OCGA § 51-12-11's duty to mitigate damages after the negligence has occurred is neither contributory nor comparative negligence (which affirmative defenses go to avoidance and can bar or reduce any recovery), USF&G's duty to mitigate damages is an affirmative defense, which must be pled and proved. See *Blaxton v. Clemens*, 202 Ga. App. 668, 669 (3) (415 SE2d 304) (1992); *Malak v. First Nat. Bank of Atlanta*, 195 Ga. App. 105, 107-108 (393 SE2d 267) (1990).

While neither the answers nor the pre-trial order set out any negligence affirmative defenses, at trial evidence was admitted that raised the affirmative defense of mitigation of damages. Thus, the evidence impliedly amended the pleadings as a matter of law. OCGA § 9-11-15 (b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . . [B]ut failure so to amend does not affect the result of the trial of these issues." Thus, the affirmative defense of failure to mitigate the plaintiff's damages was placed squarely before the jury and was erroneously denominated "contributory or comparative negligence," instead of failure to mitigate damages. The defendants erroneously argued that such failures to mitigate damages were acts of contributory or comparative negligence and requested that the trial court so charge the jury, which it erroneously did.

However, since the jury returned substantial total damages for USF&G, the jury did not find contributory negligence, or such comparative negligence, as would totally bar recovery by USF&G. Therefore, such portion of the charge was harmless. The remainder of the charge instructed the jury that they should reduce any verdict for the plaintiff in proportion to any negligence by USF&G. The only evidence of USF&G's negligence dealt with the failure to mitigate its damages. While the trial court should have charged the jury on mitigation of damages because the evidence supported such charge (instead of comparative negligence), the jury was instructed to reduce the damages by plaintiff's negligence, which did apply evidence of failure to mitigate. Based upon the verdict, the jury did, in fact, apply evidence of failure to mitigate; the jury, in fact, reduced the damages awarded based upon evidence of failure to mitigate, and reached the same result. The evidence before the jury justified the jury instruction on USF&G's duty to mitigate its damages by the exercise of ordinary care. *Southern Bell Tel. &c. Co. v. Don Hammond, Inc.*, 198 Ga. App. 517 (402 SE2d 112) (1991); *Hannula v. Ramey*, 177 Ga. App. 512 (339 SE2d 735) (1986); *Thico Plan, Inc. v. Ashkouti*, 171 Ga. App. 536 (320 SE2d 604) (1984); *Butler v. Ander-*

*son,* 163 Ga. App. 547 (295 SE2d 216) (1982); *Gleason v. Rhodes Center Pharmacy,* 94 Ga. App. 439 (95 SE2d 293) (1956); *Smith v. Hightower,* 80 Ga. App. 293 (55 SE2d 872) (1949).

The trial court, believing that the evidence raised issues of comparative and contributory negligence, erroneously charged OCGA § 51-12-33, which authorizes a jury that it "may apportion its award of damages" and may disregard joint and several liability of joint tortfeasors when the plaintiff also was "to some degree responsible for the injury or damages claimed." This Code section, from the plain language, applies only to plaintiff's negligence in concurrently causing the injury or damages by contributory negligence, assumption of the risk, and comparative negligence; it does not apply to failure to mitigate damages or injury *after* the completion of the tort and injury or damages results. *Union Camp Corp. v. Helmy,* 258 Ga. 263, 267-268 (367 SE2d 796) (1988). The description of the content of the Act as originally enacted states: "to provide for a permissible apportionment of damages in certain causes of action among defendants according to fault of each defendant the plaintiff is to some degree responsible for the injury or damages claimed; to provide that in such cases damages shall not be joint liability or subject to contribution." Ga. L. 1987, pp. 915, 920-921, § 8.

OCGA § 51-12-31 provides that where several tortfeasors are sued jointly, "the jury may specify the particular damages to be recovered of each defendant. Judgment in such a case must be entered severally." Thus, the jury has the right to disregard joint and several liability and to return separate verdicts under circumstances other than those covered by OCGA § 51-12-31, when damage to a property interest, as opposed to a personal injury, is inflicted. See *Union Camp Corp.,* supra at 268; *Jones v. Hutchins,* 131 Ga. App. 808 (207 SE2d 224) (1974); *Craven v. Allen,* 118 Ga. App. 462 (164 SE2d 358) (1968); *Hightower v. Landrum,* 109 Ga. App. 510, 515 (5) (a) (136 SE2d 425) (1964); *Daniel v. Robinson,* 96 Ga. App. 342 (100 SE2d 94) (1957); see also *McCalla v. Shaw,* 72 Ga. 458 (1884). Thus, the jury was authorized to return separate verdicts against joint tortfeasors, but not under OCGA § 51-12-33, because this was a damage to a property interest, as opposed to a personal injury to an individual. See OCGA § 51-12-31.

In sum, the trial court erred in giving the wrong charges. However, the effect of the charges was the same as if the correct charges on mitigation of damages and apportionment of damages between joint tortfeasors to a property interest had been given. Thus, based upon the facts and circumstances of this case, the error was harmless. *Heath v. L. E. Schwartz & Son, Inc.,* 199 Ga. App. 452 (405 SE2d 290) (1991); *Maloy v. Dixon,* supra; *Scarborough v. Martha White Mills of Ga.,* 115 Ga. App. 737, 738 (155 SE2d 818) (1967).

*Case No. A98A0180*

4. MIC, Coleman, and the Basiles' enumerations of error one and two are controlled by the holding in Division 1 of this opinion.

5. The third enumeration of error is that the trial court erred in denying the motions for directed verdict brought on behalf of all of the individually named appellants. We do not agree.

"The standard of review of the trial court's denial of a motion for directed verdict in a civil case is the 'any evidence' standard. *CSX Transp. v. Barnett*, 199 Ga. App. 611, 613 (2) (405 SE2d 506) (1991)." (Citations and punctuation omitted.) *Candler v. Davis & Upchurch*, 204 Ga. App. 167, 170 (419 SE2d 69) (1992); see also *Dept. of Human Resources v. Montgomery*, 248 Ga. 465, 466 (284 SE2d 263) (1981); *Speir v. Williams*, 146 Ga. App. 880 (247 SE2d 549) (1978). "Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. OCGA § 9-11-50. . . . [this Court] must decide whether all the evidence demanded it, or whether there was some evidence supporting the verdict of the jury. *Bryant v. Colvin*, 160 Ga. App. 442 (287 SE2d 238) (1981)." *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554) (1983); accord *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 94 (2) (406 SE2d 502) (1991). The evidence in this case, while in conflict, supported the verdict. The trial court did not abuse its discretion in denying the motion for directed verdict.

6. The fourth enumeration of error is that the trial court erred in entering its order, dated February 4, 1997, which denied appellants' motion for new trial, motion to set aside judgment, and motion for judgment n.o.v.

(a) The trial court did not err in denying the motion for new trial. A corporate entity can be disregarded where the corporate arrangement was a sham; the corporation overextended its privileges in the use of the corporate form to defeat justice or to evade statutory, contractual, or tort liability; or where the principals have otherwise abused and disregarded the corporate form. See *Hickman v. Hyzer*, 261 Ga. 38 (401 SE2d 738) (1991); *Mark Six Realty Assoc. v. Drake*, 219 Ga. App. 57 (463 SE2d 917) (1995); *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840 (392 SE2d 37) (1990). The jury was also authorized to find that the individual defendants were liable for the pre-incorporation expenses of MIC, because they knew when they took out the insurance with USF&G that they had not taken any steps to incorporate and that the subsequently formed corporation was under-capitalized. "Every presumption is in favor of the validity of a verdict, and it should be construed so as to stand, if practicable. [Cit.]" *Herman v. Boyer*, 154 Ga. App. 617 (269 SE2d 107) (1980).

Further, the defendants waived any objection as to the form and consistency of the verdict by failing to object at trial. No objection was made prior to the verdict form being submitted to the jury or after the return of the verdict. Thus, the defendants waived any grounds as to inconsistency or other irregularities in the verdict. *Ray v. Stinson*, 254 Ga. 375 (329 SE2d 502) (1985); *Knisely v. Gasser*, 198 Ga. App. 795 (403 SE2d 85) (1991).

(b) "[T]he primary question for determination is whether the evidence introduced, with all reasonable deductions therefrom demanded a verdict for the defendant[s], as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. (Cits.) [T]he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts. *Bryant v. Colvin*, [supra at 444]. While it is erroneous for a court to direct a verdict in favor of a particular party to the cause where there is an issue of fact, when the proven facts, viewed from every possible legal point raised by the evidence, would sustain no finding other than the one directed, i.e., where there is no issue of fact, then it is error to refuse to direct an appropriate verdict. (Cits.) Further, in giving consideration to a motion for judgment notwithstanding the verdict, the court is concerned substantially with the same principles of law as are applicable upon consideration of the motion for directed verdict. The question for determination is whether or not the evidence demands a verdict for movant (cits.), and if there is no evidence to support the verdict returned, denial of the motion is error. *City of Atlanta v. West*, 160 Ga. App. 609 (2) (287 SE2d 558) (1981). The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same. *Pendley v. Pendley*, [supra]. *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 250 (1) (329 SE2d 918), rev'd on other grounds at 254 Ga. 734, 735 (1) (334 SE2d 308) [(1985)]." (Punctuation omitted.) *Lister v. Scriver*, 216 Ga. App. 741, 744-745 (1) (456 SE2d 83) (1995). Thus, the trial court did not err.

7. Defendants' fifth enumeration of error is that the trial court erred in granting judgment n.o.v. to USF&G against MIC. However, there was no conflict in the evidence that MIC breached its insurance contract with USF&G by not paying the premiums. See Division 6, supra.

## Case No. A98A0181

8. Paul's first enumeration of error is that the trial court erred in denying his motion for directed verdict and subsequent motion for judgment n.o.v. by failing to apply § 552B, Restatement, Torts 2d, in contravention of the Supreme Court's holding in *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983), which adopted a claim for negligent misrepresentation as articulated in § 552B, Restatement, Torts 2d. In addition, Paul contends that the trial court erred in denying the motion for directed verdict and judgment notwithstanding the verdict, because the wrong measure of damages was used and any negligent misrepresentation on the application was not the proximate cause of MIC's failure to pay its premiums.

In *Robert & Co.*, supra, the Supreme Court of Georgia adopted § 552, Restatement, Torts 2d; however, this does not mean that it automatically adopted other subparts, the commentary, or explanations, which is a synthesis of what the reporter and commissioners believed to be the majority of states' position on such area of the law. The Supreme Court did not adopt § 552B, nor has this Court. In *Advanced Drainage Systems v. Lowman*, 210 Ga. App. 731 (437 SE2d 604) (1993), this Court held that negligent misrepresentation was an exception to the Economic Loss Rule in tort cases. However, pretermitting whether or not such measure of damages under § 552B should be adopted, that decision does not have to be reached in this case, because of the question of nominal damages presented by evidence in this case.

OCGA § 51-12-4 reads: "Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money. If an injury is small or the mitigating circumstances are strong, nominal damages only are given." "The law infers some damage from the invasion of a property right and if no evidence is given of any particular amount of loss, declares the right by awarding what it terms nominal damages. *Williams v. Harris*, 207 Ga. 576 (2) (63 SE2d 386) [(1951)]; *Weimer v. Cauble*, 214 Ga. 634, 636 (106 SE2d 781) [(1959)]." *Ga. Power Co. v. Womble*, 150 Ga. App. 28, 32 (3) (256 SE2d 640) (1979); see also *Batson v. Higginbothem*, 7 Ga. App. 835 (68 SE 455) (1910). "[N]ominal damages are always allowed for any tortious invasion of a property right, though no actual damage results therefrom. [Cit.]" *Williams v. Harris*, supra at 579. Fraud or breach of a legal duty may give rise to nominal damages; "[e]ven if [plaintiff] suffered only nominal damages by them, the question of damages is for the jury." *Holmes v. Drucker*, 201 Ga. App. 687, 689 (2) (411 SE2d 728) (1991); see also *Peters v. Hyatt Legal Svcs.*, 211 Ga.

App. 587, 590 (1) (440 SE2d 222) (1993). Nominal damages are not limited to a small amount; "[a] plaintiff may recover nominal damages not only where his actual damages are minute, but also where he has not proved his actual damages by a preponderance of the evidence to the satisfaction of the jury." *Miller & Meier & Assoc. v. Diedrich,* supra at 254. If the award of nominal damages is deemed excessive, then the remedy is a motion for new trial based upon such issue. Id. at 255; see also *MTW Inv. Co. v. Alcovy Properties,* 228 Ga. App. 206 (491 SE2d 460) (1997); *Caswell v. Jordan,* 184 Ga. App. 755, 759 (4) (362 SE2d 769) (1987); *Tilley v. Page,* 181 Ga. App. 98, 99 (1) (351 SE2d 464) (1986). Thus, plaintiff was entitled to recover damages other than under § 552B, Restatement, Torts 2d. The trial court did not err in denying the motions.

9. Paul's second enumeration of error is that the trial court erred in denying his motions for directed verdict and j.n.o.v.

The standards for granting and denying directed verdicts and j.n.o.v. are set forth in Division 6, supra, and are applicable here as well. The evidence was in conflict.

Moreover, generally proximate cause is a jury issue except in plain, clear, and palpable cases. *McDonald v. Coca-Cola Enterprises,* 220 Ga. App. 567, 568 (469 SE2d 805) (1996); *Keith v. Beard,* 219 Ga. App. 190, 193 (464 SE2d 633) (1995). It was foreseeable that, if the policy was issued to a financially risky business that was undercapitalized from the beginning, then there was a high probability that MIC would default on payment of the premium. Paul knew that the individual defendants had financial problems coming up with the down payment on the premium, because they told him that they did not have the money for the initial payment of $15,000. *Schernekau v. McNabb,* 220 Ga. App. 772, 773 (470 SE2d 296) (1996).

The failure of MIC to perform its contract obligations by paying the premium was a breach of contract and not a tort; therefore, such breach of contract could not act as a supervening act of negligence so as to constitute the proximate cause of USF&G's damages. See *Hudson v. Venture Indus.,* 147 Ga. App. 31 (248 SE2d 9) (1978), aff'd 243 Ga. 116 (252 SE2d 606) (1979). Furthermore, Paul could reasonably foresee the breach by MIC from his actual prior knowledge of its financial condition; thus, the breach could not be a supervening cause. *Smith v. Commercial Transp.,* 220 Ga. App. 866, 867 (470 SE2d 446) (1996). Thus, the trial court did not err in denying Paul's motions.

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 16, 1998

*Swift, Currie, McGhee & Hiers, Jeffrey Y. Lewis, John O. Sullivan,* for United States Fidelity & Guaranty Company.

*Todd K. Maziar,* for MIC Enterprise.

*Lokey & Smith, Malcolm Smith, Jon W. Burton,* for Paul Associates, Inc.