**THYSSEN ELEVATOR COMPANY**
**d/b/a Dover Elevator Company,**
**Plaintiff,**

v.

**DRAYTON–BRYAN COMPANY,**
**A Partnership, Defendant.**

**No. 400CV002.**

United States District Court,
S.D. Georgia,
Savannah Division.

June 30, 2000.

A. Martin Kent, Kent, Thomas, Worsham & Smart, Savannah, GA, for Dover Elevator Co., plaintiff.

Frank W. Seiler, D. Michael Conner, Bouhan, Williams & Levy, Savannah, GA, for Drayton–Bryan Co., defendant.

A. Martin Kent, Kent, Thomas, Worsham & Smart, Savannah, GA, for Dover Elevator Co., counter-defendant.

## ORDER

EDENFIELD, District Judge.

## I. BACKGROUND

In 1996, the then recently dissolved law firm of Adams, Gardner, Ellis & Inglesby, P.C. (Adams) employed Elizabeth Roberts—the firm's former office manager—to help it wind up its affairs. Doc. # 25 ¶¶ 3–6;[1] # 32 at 12–13. Alone inside the firm's

---

1. This Court applies the summary judgment principles explained in *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996) and *Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996). Unrebutted, evidentially supported Fact Statements are deemed admitted under S.D.Ga. Local Rule 56.1 and *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d

building on a Friday afternoon, she died while attempting to escape from its elevator, which had stopped between floors. Doc. # 25 ¶¶ 5–10. Defendant Drayton–Bryan Company (DB) owned the building, and Adams was DB's tenant. *Id.* ¶ 4.

Roberts's husband subsequently brought a State court wrongful-death action (individually and as executor of Mrs. Roberts's estate) against Thyssen Elevator Company, d/b/a Dover Elevator Company (Dover), the elevator repair company that had serviced the elevator 16 days before Roberts's death. *Id.* ¶¶ 2, 11; doc. # 18 at 4; # 34 App. A. He also sued Adams, but not DB. *Id.*

Dover third-partied DB, but that "action was severed from the first trial by agreement of counsel." Doc. # 18 at 4. After Dover and Adams settled with Mr. Roberts, Dover brought this action to recover contribution from DB for half of the $633,333.33 it paid to him (Adams, incidentally, paid him $366,666.66). Doc. # 25 ¶ 2; # 28 App. A ¶¶ 18–19. DB responded with an indemnification counterclaim for its defense costs in both actions. Doc. # 12 at 4–6.

DB now moves for summary judgment on the theory that Mrs. Roberts assumed the risk of her own injury, thus absolving DB of any joint tortfeasor liability.[2] Doc. # 19. DB also moves for partial summary judgment "on [Dover's] theory that [DB] is vicariously liable for contribution." Doc. # 21. And, it moves for partial summary judgment "on any claim that [DB] is liable for merely passive negligence." Doc. # 23.

Dover opposes those motions, doc. 30–31, and moves for summary judgment against DB. Doc. # 32. At Dover's request, *see* doc. # 29, the Court heard oral argument on 6/13/00. There both sides agreed that this is an atypical case that in no small part turns on subtle distinctions between contribution and indemnification law.

## II. *ANALYSIS*

### A. Contribution & Indemnification

"With respect to actions in federal courts, it is well established that, for the purposes of rights founded on state statutes and for the purposes of the *Erie* doctrine, the right of a joint tortfeasor to contribution from his cotortfeasors is a matter of substantive law which, in diversity suits, is controlled by state, and not federal, law." 18 Am.Jur.2d *Contribution* §§ 58–59.

As noted in *Greyhound Lines, Inc. v. Cobb County, Ga.*, 681 F.2d 1327 (11th Cir.1982), Georgia contribution law can be confusing, *id.* at 1332–33, in part because courts sometimes indiscriminately mix the terms "indemnification" and "contribution" without pausing to precisely define them. Contribution

> refers to *apportioning* damages between joint tortfeasors by requiring each to pay his proportionate share, while indemnity implies a *shifting* of the *entire loss* from the party who paid the judgment to the tortfeasor who should in fairness bear it. The distinction is often blurred.

*Id.* at 1332 n. 7 (emphasis added); *see also Jones v. Otis Elevator Co.*, 861 F.2d 655, 664 n. 15 (11th Cir.1988) ("A successful

629, 632 (11th Cir.1988). Dover filed no response to defendants' Fact Statement (doc. # 25), and at oral argument its counsel stated no opposition to it.

2. Litigants, statutes and courts often use the term "joint tortfeasor" without precisely defining it. As used here,

> "joint tortfeasors" includes "concurrent tortfeasors".... "[A] jointly committed tort results from the concerted action of two or more persons, while a concurrently com-

mitted tort results from the independent actions of two or more persons, done at the same time and place, but producing a single injury. Either a jointly committed tort or a concurrently committed tort may result in joint liability on the part of the tortfeasors."

Ann., *What law governs right to contribution or indemnity between tortfeasors*, 95 A.L.R.2d 1096, § 1(a) (1964) (cites omitted). Dover is vague on this point. *See* doc. # 1 ¶¶ 13–14; # 11 ¶¶ 13–14.

claim for indemnification shifts the entire burden of loss to the active tortfeasor and is governed by common law. In contrast, contribution merely apportions damages among tortfeasors and is governed by statute"). Contribution also requires a showing of common, "in pari delicto" (i.e., equally at fault) level liability, while indemnification does not.[3]

■ Another source of confusion stems from the use of active and passive negligence concepts in indemnification law. An elevator service company's act of negligently maintaining an elevator can constitute active negligence, while a building owner's failure to discover a dangerous condition created by that company can constitute passive negligence. *Jones*, 861 F.2d at 664.

In that regard, a building owner cannot delegate (e.g., to an elevator service company) its duty to maintain elevators with respect to third parties. *Id.* at 665. In other words, the owner will remain liable to an injured plaintiff.[4] But it nevertheless can recover in *indemnity* from a service company whose negligent mainte-

nance proximately caused the third party's injuries. *Jones,* 861 F.2d at 665.

Indemnity was not an option in the past. *Id.* at 664 ("Generally, under Georgia law, a joint tortfeasor is not permitted to maintain an action for *indemnity* against another tortfeasor") (emphasis added). But courts made an exception "where a joint tortfeasor's liability arose from negative action or omission [hence, passive negligence], such as failure to inspect, and the other tortfeasor's active, positive acts proximately caused the plaintiff's injuries." *Id.*

"In short, Georgia law at the turn of the century allowed indemnification based on the active/passive negligence dichotomy and contribution based upon the [Georgia] code provisions." *Greyhound,* 681 F.2d at 1332. But Georgia courts also created confusion by "occasionally merg[ing] the active/passive negligence rule into one which seemed to cover both indemnification and contribution." *Id.* (emphasis added).

Georgia's 1966–enacted contribution statute, O.C.G.A. § 51–12–32 [5] (amended in

---

**3.** "[C]ontribution is the sharing of the cost of an injury, as opposed to a complete shifting of the cost from one to another, which is indemnification. A prerequisite for contribution is that the party seeking contribution and the party from whom it is sought must share a common liability." *Fuxa v. CTB, Inc.,* 1999 WL 1338338 at *5 (Neb.App. 1999) (unpublished) (cite omitted); *Fromer v. Yogel,* 50 F.Supp.2d 227, 237 (S.D.N.Y.1999) ("Whereas contribution involves claims among joint tortfeasors, indemnification may arise when one party claims *not* to be a tortfeasor. This party, having jointly settled claims with others who are the tortfeasors, now seeks reimbursement from those actually culpable") (emphasis added); *Degener v. Hall Contracting Corp.,* —— S.W.3d ——, ——, 2000 WL 652428 at *4 (Ky. 2000) ("Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is *not* in pari delicto") (emphasis added); 41 Am.Jur.2d § 3.

**4.** *See also Gaffney v. EQK Realty Investors,* 213 Ga.App. 653, 654–55, 445 S.E.2d 771 (1994) (The law simply makes owners vicariously liable for their contractors' negligence). Furthermore, the owner must "exercise ex-

traordinary diligence on behalf of himself and his agents to protect the lives and persons of his [elevator] passengers." *Id.* at 655, 445 S.E.2d 771.

**5.** O.C.G.A. § 51–12–32 provides that
(a) Except as provided in Code Section 51–12–33, where a tortious act does not involve moral turpitude, contribution among several *trespassers* may be enforced just as if an action had been brought against them jointly. Without the necessity of being charged by action or judgment, the right of a joint trespasser to contribution from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property or for wrongful death and release therefrom.
(b) If judgment is entered jointly against several trespassers and is paid off by one of them, the others shall be liable to him for contribution.
(c) Without the necessity of being charged by an action or judgment, the right of indemnity, express or implied, from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for

1972 and 1987, *see* § 51–12–32(c)), cleared up some of the confusion by "abrogat[ing] the common law rules regarding *contribution* in Georgia," *Greyhound,* 681 F.2d at 1333 (emphasis added), thus making contribution easier to obtain.

The new code section, for example, eliminated the requirement that a joint tortfeasor must have sustained a judgment against him before he can be pursued for contribution. Now "a [joint] tortfeasor who pays a judgment enjoys a right of contribution against [all] other joint tortfeasors. O.C.G.A. § 51–12–32(a)." *Crawford v. Johnson,* 227 Ga.App. 548, 549, 489 S.E.2d 552 (1997).

■ Stated differently, a joint tortfeasor who settles with a plaintiff can pursue other co-tortfeasors in contribution, even where no judgment has been entered against any of the tortfeasors. *State Line Metals, Inc. v. Aluminum Co. of Am.,* 216 Ga.App. 14, 15 n. 1, 453 S.E.2d 474 (1995) ("Contribution is a right afforded a joint tortfeasor and is not affected by any settlement between plaintiff and another joint tortfeasor").

■ And, a joint tortfeasor need not even implead another in order to seek contribution from him. *See State Farm Fire & Cas. Co. v. Am. Hardware Mut. Ins. Co.,* 224 Ga.App. 789, 794, 482 S.E.2d 714 (1997) (Tort defendants' failure to file

cross-claims against each other for indemnity did not preclude filing of such claims after tort action was dismissed with prejudice upon settlement).[6]

■ In practice, then, a plaintiff can elect not to sue a joint tortfeasor, but the tortfeasor she does sue may, by third-party complaint or by separate action, pursue the "un-sued" tortfeasor for contribution, even after the sued tortfeasor settles with the plaintiff. *See Marchman,* 251 Ga. at 478, 306 S.E.2d 290.[7] However, "[t]his does not mean the plaintiff in the contribution suit is relieved of the necessity [of proving] the defendant was a joint tortfeasor." *Id.* at 477 n. 4, 306 S.E.2d 290.

In that respect, Georgia courts no longer distinguish between active and passive negligence in *contribution* actions. *Greyhound,* 681 F.2d at 1333 ("The Georgia cases which correctly analyze the contribution issue without reference to the active/passive negligence theories are legion").

■ To summarize, a passively negligent building owner can pursue *indemnification* from an actively negligent elevator service company—*if* his contract with the service company,[8] or the common law (indemnity is an equitable doctrine, *see* 41 Am.Jur.2d § 3), supports his claim. *Jones,* 861 F.2d at 665; *see also Fromer,* 50 F.Supp.2d at 240; 41 Am.Jur.2d § 29. But

---

injury to person or property or for wrongful death and release therefrom.

O.C.G.A. § 51–12–32 (emphasis added). Although the statute speaks of *trespassers,* courts have construed it to encompass joint tortfeasors. *See, e.g., Marchman & Sons, Inc. v. Nelson,* 251 Ga. 475, 306 S.E.2d 290 (1983).

6. Nevertheless, the 1966 Georgia General Assembly also amended O.C.G.A. § 9–11–14(a) to allow a joint tortfeasor "to implead a joint tortfeasor without a judgment having been entered against the former." W.R. Wilburn, Ga.Law of Damages § 10–5 at 171 (1994) ("In short, a defendant tortfeasor after 1966 has both a substantive right and procedural mechanism to assert contribution claims against joint tortfeasors"); *see also State Line,* 216 Ga.App. at 16, 453 S.E.2d 474 (third party complaints may be used to seek contri-

bution); *McMichael v. Ga. Power Co.,* 133 Ga.App. 593, 596, 211 S.E.2d 632 (1974) (same for indemnification).

7. Cited in Ann., *Contribution between joint tortfeasors as affected by settlement with one or both by person injured or damaged,* 8 A.L.R.2d 196 (1949); *see also American Hardware,* 224 Ga.App. at 794, 482 S.E.2d 714; *Johnson and Harber Const. Co. v. Bing,* 220 Ga.App. 179, 180, 469 S.E.2d 697 (1996) ("[i]t is therefore not requisite to a joint tortfeasor's right of contribution that he file cross-claims against another joint tortfeasor in an underlying suit").

8. Adams assumed DB's contract with Dover in 1985, doc. # 18 at 2, so there was no contractual relationship between DB and Dover in 1996. *Id.*

an actively negligent owner cannot pursue equitable (i.e., non-contract based) indemnification from an actively (or, for that matter, a passively) negligent actor:

> Generally, where joint tortfeasors have both been actively or affirmatively negligent in contributing to an injury, neither is entitled to indemnity from the other; there is no indemnity between active tortfeasors. For example, an elevator company could not recover on its third-party claim for common law indemnity arising out of a wrongful death action brought on behalf of a hotel employee who fell down an empty elevator shaft to his death, since the elevator company was actively negligent.

41 AM.JUR.2D § 28 ("Both parties actively negligent") (footnote omitted); *see also Colt Indus. Operating Corp. v. Coleman,* 246 Ga. 559, 560, 272 S.E.2d 251 (1980) ("*if* the negligence of the tortfeasor is passive as opposed to active, a tortfeasor can seek indemnity against a party whose conduct is alleged to be the proximate cause of the injury") (emphasis added); *Gilbert v. CSX Transp.,* 197 Ga.App. 29, 32, 397 S.E.2d 447 (1990); *Peacock Const. Co. v. Montgomery Elevator Co.,* 121 Ga.App. 711, 713, 175 S.E.2d 116 (1970).

■ In contrast, any negligent tortfeasor can pursue another negligent tortfeasor in *contribution,* regardless of whether each other's negligence is active or passive, since Georgia courts have abandoned the active/passive negligence distinction here. *See Greyhound,* 681 F.2d at 1333 ("Greyhound's active negligence does not bar its contribution claim under Georgia law....").[9]

■ Furthermore, Georgia contribution law does not compare negligence, *see* Part II(D) infra, but simply ensures an equal allocation of the tort's "cost." Example: A is personally injured by B and C but A sues only B and not C. B then pays A money to settle A's claims while C (of course) pays nothing. B can now pursue C for C's one-half of what B paid, regardless of degree of fault. *See Tenneco Oil Co. v. Templin,* 201 Ga.App. 30, 35, 410 S.E.2d 154 (1991) ("Contribution among joint tortfeasors is enforceable where one has paid more than his share of the common burden which all are equally bound to bear") (quotes and cite omitted).

Finally, Georgia law in this area is rife with subtle distinctions, and the parties here have not always grasped them in citing cases to this Court. For example, if A sues B and C for *property* damages, O.C.G.A. § 51–12–31 authorizes the jury, "[i]n its verdict ... [to] specify the particular damages to be recovered of each defendant."

■ In other words, the jury may apportion damages in both property cases, *see U.S. Fidelity & Guar. Co. v. Paul Associates,* 230 Ga.App. 243, 248, 496 S.E.2d 283 (1998), and in personal injury cases where A's own negligence is a concurrent cause of her own injuries. *U.S. Fidelity,* 230 Ga.App. at 248, 496 S.E.2d 283; O.C.G.A. § 51–12–33. But in a personal injury case where A is *not* partly responsible for her own injuries, "joint tortfeasors are equally liable for the judgment, regardless of their relative degree of responsibility." [10]

---

9. *See also Leesburg Hosp. Asso. v. Carter,* 321 So.2d 433, 435 (Fla.App.2 Dist.1975) (In a malpractice action against a hospital for alleged negligence in disregarding certain test results and in failing to call a physician to come to plaintiff's aid, the hospital was not entitled to seek indemnification from plaintiff's personal physician who ignored the hospital's calls advising the physician that plaintiff's condition was worsening, since both the hospital and doctor were guilty of active negligence and their conduct combined to produce a single injury; however, the hospital was entitled by court rules to seek contribu-

tion from the doctor), cited in 18 AM.JUR 2D *Contribution* § 45.

10. *Rust Intern. Corp. v. Greystone Power Corp.,* 133 F.3d 1378, 1382 (11th Cir.1998) ("Under Georgia law, liability may be apportioned among joint tortfeasors only if the plaintiff was negligent and was therefore partly responsible for the injury. If the plaintiff is *not* partly responsible for the injury, joint tortfeasors are *equally* liable for the judgment, regardless of their relative degree of responsibility") (emphasis added; cite omitted); see generally Ann., *Propriety and effect of jury's*

## B. An Atypical Case

In many respects the instant case does not fit the typical case model, where the victim sues the passively negligent elevator owner and actively negligent elevator repair company, and the owner then pursues the repair company under an indemnity theory. Here the victim did *not* sue the owner (DB), only its repair company and its tenant (Dover and Adams respectively).

Also, Dover had no repair contract with DB, but rather with its tenant, Adams. And, Dover contends, that contract limited Dover to a mere lubrication/inspection duty. Doc. # 18 at 2, 11–12; # 31 exh. A. Finally, Dover maintains that DB in fact was actively negligent because, among other things, it in effect "went cheap" on needed repairs. *See* doc. # 18 at 4–5; *but see* doc. # 22 at 2–3 (DB insists it spent the money).

So, Dover concludes, DB was at least partially negligent, and under § 51–12–32 contribution principles, any negligence— passive or active—exposes DB to a *contribution* judgment for one-half of Dover's settlement expense. *See* doc. # 18 at 9–15. DB, Dover further contends, therefore has but one defense at this juncture: to prove that it is not a joint tortfeasor. *Id.* at 14.[11]

Dover therefore seeks a trial on the merits but summary judgment on the legal principles it now advocates in order to guide its trial presentation. Doc. # 18 at 15. It also correctly insists that DB can advance no "comparative negligence" defense, *see* infra Part II(D), but instead can show only "that all of the negligent acts of the underlying Defendants [i.e., Dover and the law firm] and Elizabeth Roberts con-stituted the sole proximate cause of her death, i.e., [DB] committed no act of [active] or passive neglect." Doc. # 18 at 15.

## C. The Collusive Settlement Factor

While Dover's legal analysis is correct so far, one question overarches it: Suppose A, injured by B and C, elects to sue only B, not C. Suppose further that B fails to litigate a dispositive defense, then, mid-trial, settles with A, after which B pursues contribution from C.

In that scenario, C could convincingly argue that (1) B should have litigated the dispositive defense because it would have obviated B's need to seek contribution from C (in other words, B voluntarily paid a debt that it was not legally required to pay); and (2) such a rule would (i) vindicate the public policy interest in preventing collusive litigation/settlements aimed at shifting responsibility costs to an unsued third party; and (ii) trump the competing public interest in encouraging settlement, since manipulative settlements by definition defraud and misuse the court system.

To varying degrees these arguments have been embraced elsewhere, and sometimes by courts that have not distinguished between indemnification and contribution. In "strict" jurisdictions, for example, "a settling defendant has no right of contribution from other defendants who remain in the case unless the settling defendant has discharged the liability of the one from whom contribution is sought." *Fetick v. Am. Cyanamid Co.,* 1999 WL 1054810 at *2 (Mo.App.E.D. 1999), *transferred to Mo. S.Ct.* (3/21/00).[12] The "strict" rule evidently is aimed at preventing collusive lawsuits/settlements. In others jurisdictions,

---

*apportionment of damages as between tortfeasors jointly and severally liable,* 46 A.L.R.3d 801 § 3(a) (1972).

11. Of course, the burden is on Dover to first prove that DB is a joint tortfeasor. *Marchman,* 251 Ga. at 478, 306 S.E.2d 290.

12. *Fetick cited Cardinal Glennon Hosp. v. Am. Cyanamid Co.,* 997 S.W.2d 42, 44–45 (Mo. App.1999) (Hospital was barred, as matter of law, from pursuing contribution claim against non-settling manufacturer of polio vaccine and other drug company where hospital's settlement of underlying medical malpractice action did not obtain discharge of liability of manufacturer or drug company to polio victim, even though contribution statute did not expressly address issue of contribution claims by settling tortfeasors against non-settling tortfeasors). *Fetick,* 1999 WL 1054810 at *2.

courts examine the "good faith" of B's settlement with A, and whether B "caved in" too easily so as to "overshift" liability costs to C.[13]

What is the Georgia rule on this? Much struggle over the answer to that question can be found in *Fed. Paper Bd. Co. v. Harbert–Yeargin,* 92 F.Supp.2d 1342, 1352–56 (N.D.Ga.1998) (*"Federal I"*). In a later opinion (albeit published in an earlier reporter volume), that court illuminated

> *GAF Corp. v. Tolar Construction Co.,* 246 Ga. 411, 271 S.E.2d 811 (1980), [where] the Georgia Supreme Court held that the defendant in a tort lawsuit must plead a statute of limitations defense in the original trial before being able to recover for *indemnification* against a third party in a subsequent trial.

*Fed. Paper Bd. Co. v. Harbert–Yeargin, Inc.,* 53 F.Supp.2d 1361, 1377 (N.D.Ga. 1999) (*"Federal II"*) (emphasis added). There the court referenced indemnification. But it then delved into the source of the *GAF* court's reasoning:

> Relying on a Louisiana case, the [*GAF*] court reasoned "[where] an action brought by an injured person against an alleged tortfeasor results in the alleged tortfeasor compromising the claim or being cast in judgment, no indemnification *or contribution* can be recovered by the party cast against a third party if the party cast had a defense available which would have defeated the action but failed to assert it." *Id.* 246 Ga. at 412, 271 S.E.2d at 812 (quoting *Jones v. Wright,* 258 So.2d 195, 197–98 (La.Ct. App.1972)).

*Id.* at 1377 (emphasis added). ·

In *GAF,* the court specifically noted the contribution plaintiff's (Tolar's) frank admission that it did not exploit its statute of limitations defense in order to "limit its 'total exposure' to the original plaintiff by keeping [the contribution defendant] GAF in [that] lawsuit...." 246 Ga. at 411, 271 S.E.2d 811. The court essentially reasoned that, where one joint tortfeasor fails to invoke a complete defense, the raison d'etre for contribution and indemnification dissolves. *Id.* at 412, 271 S.E.2d 811.

In *Federal I,* a contractual indemnity case, the court reasoned that, in the A vs. B vs. C hypothetical expressed above, C *should* be required to show that B had— but failed to invoke—a complete defense "as a matter of law" (e.g., a statute of limitations defense) to A's claim. 92 F.Supp.2d at 1353–55 (to conclude that C can insist that B should have litigated a complete *factual* defense would force B to trial and risk losing a larger amount; plus, contribution courts would then have to conduct "mock trials," with B advocating A's position against itself, all to prove to C that B was justified in settling with A).

**13.** See *Stickler v. Am. Augers, Inc.,* 303 Ill. App.3d 689, 236 Ill.Dec. 817, 708 N.E.2d 403, 406–08 (1999) (In wrongful death and survival action brought by widow of construction worker against project supervisors and manufacturer of auger that tipped over and crushed worker, settlement agreement which released worker's employer, as third-party defendant, from over a million dollars in workers' compensation liability for nominal consideration without regard for employer's relative culpability, was not in good faith for purposes of Joint Tortfeasor Contribution Act; settlement shifted balance of employer's liability to manufacturer while giving dismissal to supervisors); *Dacotah Mktg. and Research, LLC v. Versatility, Inc.,* 21 F.Supp.2d 570, 576–79 (E.D.Va.1998) (Under Virginia law as predicted by the district court, "good faith" requirement of statute allowing release with one of multiple tort-feasors bars release based on collusion or other tortious or wrongful conduct such as fraud or dishonesty between the plaintiff and settling tortfeasor); *see also id.* at 579 ("When an alliance harmful to the non-settling party is the essential object of a release, that release is not given in good faith"); *Hager v. Marshall,* 202 W.Va. 577, 505 S.E.2d 640, 646 (1998) (The focus of the trial court's determination as to whether a settlement has been made in good faith is not whether the settlement fell within a "reasonable range" of the settling tortfeasor's proportional share of comparative liability, but whether the circumstances indicate that the non-settling tortfeasor was substantially deprived of a fair trial because of corrupt behavior on the part of the plaintiff and the settling tortfeasor or tortfeasors).

Yet, the *Federal I* court conceded, earlier Georgia precedent suggests that, where *evidence* " 'demand[s] a finding that there was a defense which would have defeated a claim[,]' " the settling tortfeasor's indemnity right might be lost. *Federal I*, 92 F.Supp.2d at 1355 n. 21 (quoting *Foster v. Nix*, 173 Ga.App. 720, 727, 327 S.E.2d 833 (1985)). This suggested that Georgia courts do recognize that a defense as a matter of *fact* (e.g., whether A, the original plaintiff, assumed the risk) could be exploited by C. *Id.*

The *Federal I* court appreciated the practical difficulty with allowing "complete factual defense" arguments, and suggested that that morass could be avoided if C were required to join B in the underlying case, or possibly seek a declaratory judgment action before A and B go to trial (and/or settle). *Id.* at 1356; *see also Reliance*, 92 F.Supp.2d at 1341 n. 12. Still, since the "B" party in *Federal I* did not argue that C could only complain about B's failing to litigate a complete defense *as a matter of law*, the court did not reach that issue. *Id.* at 1355 ("the parties seem to agree that a jury must determine the merit of [B']s affirmative defenses against [A]'s claims"); *Reliance*, 92 F.Supp.2d at 1338 n. 9.

But the *Federal I* court gave that same B party a chance to raise that issue by way of a renewed summary judgment motion. *Federal II*, 53 F.Supp.2d at 1376–77. There B claimed that C could only prevail by showing that B had left a "complete defense as a matter of *law*" on the table before settling with A. *Id.*

The *Federal II* court ruled that a complete defense meant a defense as matter of law. *Id.* at 1380; *Reliance*, 92 F.Supp.2d at 1338 n. 9. But there a written indemnification agreement existed, *id.* at 1379, while

here none exists between Dover and DB. Instead, the Court is confronted only by DB's common law indemnification claim against Dover, and Dover's statutory contribution claim against DB (with the latter premised upon Dover's allegation that DB, inter alia, "went cheap" on elevator repairs, thus requiring a jury to sort out proximate cause issues and allocate responsibility equally between Dover and DB).

In any event, Dover argues that DB has waived the "complete *factual* defense" issue. It points out that

the alleged tortfeasor may oppose the original settlement. In this case[,] after [DB was] brought [into] the underlying [State court] action by [Dover's] third party complaint, based on contribution, [DB] *could have* argued that [Dover] had a complete defense to Roberts['s] claim, which would have prevented any recovery. Also, [DB] *could have* argued that the settlement with [Roberts] was procured by fraud or that the amount of the settlement was unreasonable. [But DB has] never raised any of these defenses. These issues [therefore] have been *waived* and the validity of the underlying settlement is uncontested. They are no longer part of this case.

Doc. # 18 at 13–14 (emphasis added); *see also* doc. # 32 at 7 ("By [its] failure to object to the settlement, [DB is] now bound by the facts of the settlement and Dover's admission *in judicio* [because it settled] of liability to the [Robertses]"); *see also Federal II*, 53 F.Supp.2d at 1379 n. 21.

Dover is simultaneously raising a subissue: *when* does C have to raise the "complete defense" defense (during the underlying State court suit or can it raise it here?).[14] The Court need not address

**14.** Pointing to *Federal II*, Dover says State court. Doc. # 32 at 8. But the *Federal II* passage on which Dover relies for this result is dicta based on *Superior Rigging & Erecting Co. v. Ralston Purina Co.*, 172 Ga.App. 79, 322 S.E.2d 95 (1984). *See Federal II*, 53 F.Supp.2d at 1379 n. 21. *Superior* did not explicitly address this issue, and in any event

that case concerned a *contractual* indemnity claim. The *Federal II* court cited no other authority to support its ruling, though this Court notes that the Eleventh Circuit appears to cite *Superior Rigging* for this result. *See Southern Ry. Co. v. Georgia Kraft Co.*, 823 F.2d 478, 480 (11th Cir.1987).

that because DB's reply brief does not challenge Dover's "waiver" argument, doc. # 34 at 1–4 (though it did challenge the Dover/Roberts settlement's reasonableness in its Answer. *See* doc. # 12 at 2). DB therefore has conceded the issue (i.e., whether Dover's contribution claim is barred by Dover's failure to litigate any factual or legal defenses).

Instead, DB argues only that Mrs. Roberts assumed the risk, thus entitling DB to summary judgment (since, under that showing, Dover cannot show any DB negligence needed to support Dover's contribution claim). *Id.* Alternatively, DB contends, it is entitled to litigate proximate cause, assumption of risk, etc., at trial. *Id.* at 5. So, DB is impliedly acknowledging Dover's right to bring this contribution action, but challenges it on the merits (i.e., that under *Marchman,* Dover cannot prove DB was a joint tortfeasor because Dover cannot show that DB's negligence proximately caused Mrs. Roberts's death, etc.).

■ The Court addresses DB's risk-assumption defenses below and concludes an issue of fact exists, thus requiring a trial in this case. *See infra* Part II(G). DB, however, may defend on the ground that it in fact is not a joint tortfeasor—an indispensable prerequisite to Dover's contribution claim, *Marchman,* 251 Ga. at 478, 306 S.E.2d 290—by showing that its negligence, if any, did not proximately cause the damages in question. *Cf. Olympia Servs. v. Sherwin Williams Co.,* 224 Ga. App. 437, 439, 440, 480 S.E.2d 883 (1997) ("C" party in a "contribution or indemnity" case granted summary judgment upon showing that B's negligence superseded C's).

### D. "Comparative Contribution"

At trial, shall the jury compare each actor's negligence under Georgia's comparative negligence rule? Were the Court to apply that rule, the jury conceivably could find that DB was merely 5% negligent. But that would still support Dover's contribution claim, since under the contribution principles set forth above, Dover need show only *some* DB negligence proximately causing Mrs. Roberts's death. *See* Note, *Contribution Among Joint Tortfeasors,* 12 Ga.L.Rev. at 572 ("The determination of the pro rata share for contribution is based on the number of tortfeasors *rather than* their relative fault") (emphasis added) (collecting cases); *St. Paul,* 209 Ga.App. at 185, 433 S.E.2d 112 ("ordinarily the total amount of the judgment is divided equally among *those liable* to the injured person") (emphasis added). Dover has done that by pointing to evidence that DB "went cheap" in maintaining its elevator. *See* doc. # 30 at 4–6.

Certainly good arguments exist for importing Georgia's comparative negligence rule into its contribution jurisprudence. *See* 12 Ga.Law Rev. at 572–80, citing, inter alia, *Southern Ry. Co. v. Brunswick Pulp & Paper Co.,* 376 F.Supp. 96, 102–03 (S.D.Ga.1974) (a *contractual* indemnity case). But DB has shown the Court no convincing authority for adopting them here. Hence, Dover is correct that DB's defense is confined to showing that other parties' negligence (e.g., Dover's, Adams's, Mrs. Roberts's and any combination thereof) constituted the sole proximate cause of the injuries in question.

### E. Imputable Negligence

■ DB properly cites, however, the "conjoined tortfeasor" exception to the joint tortfeasor rule. Doc. # 22 at 8–11. That exception treats two defendants who share a special relationship as one tortfeasor. An employer thus may have his employee's negligence imputed to him under respondeat superior, and both will be treated as one tortfeasor. *See St. Paul Fire, etc., Ins. Co. v. MAG Mut. Ins. Co.,* 209 Ga.App. 184, 186, 433 S.E.2d 112 (1993) (where there were multiple defendants and one was liable solely on basis of negligence imputed to it by virtue of its relationship with another defendant, the one guilty of negligent conduct and the one to whom negligence was imputed were to

be treated as one party in determining pro rata share of verdict or settlement each defendant had to pay); *see also* 18 AM. JUR.2D Contribution § 80.

■ Dover therefore cannot recover contribution from DB merely by pointing to *Gaffney*'s imputation of *Dover's* negligence to DB. But it can overcome this exception by showing that DB's *separate and independent* acts of negligence proximately caused Mrs. Roberts's injuries. *St. Paul*, 209 Ga.App. at 185, 433 S.E.2d 112. Evidently recognizing this, Dover cites alleged separate and independent acts of DB's negligence concurrently causing Mrs. Roberts's death. Doc. # 30 at 5–6; # 35 at 4–5. Dover therefore shall limit its trial presentation accordingly.

### F. DB's Indemnification Claim

At trial the Court will ask the jury to resolve whether (a) DB violated its duty of care toward Mrs. Roberts; and (b) if so, whether DB's negligence, solely or concurrently with that of Dover, Adams Mrs. Roberts (or any combination thereof), proximately caused her death. If the jury answers "no" to (a) or (b), then Dover's contribution claim fails and the Court will enter judgment for DB. If the jury answers "yes" to both, then DB is liable to Dover for one-half of its settlement costs.

Where, then, does DB's common law indemnification counterclaim fit? While the parties have cited no Georgia cases on point, logic dictates that Dover's contribution claim and DB's common law (hence, "implied") indemnification claim cannot simultaneously occupy the same legal space:

> The key element of common-law indemnification is the duty which arises from the principle that every person is accountable for the consequences of his or her own negligence. Thus, implied indemnification is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other. However, where as here two or more tortfeasors share in responsibility for the same injury . . . appor-

tionment through contribution, rather than a shifting of the entire loss through implied indemnification, is generally the appropriate remedy. While there are exceptions to this general rule, none apply to the facts in this case.

*Johnson City Cent. Sch. Dist. v. Fidelity & Deposit Co. of Maryland*, 709 N.Y.S.2d 225, 229–30 (N.Y.A.D. 3rd Dept. 2000) (quotes, cites and brackets omitted) (Apportionment through contribution, rather than a shifting of the entire loss through implied indemnification, was appropriate remedy, where village and contractor allegedly shared in responsibility for injury to public school district's property resulting from the collapse of its vehicle maintenance buildings).

■ DB nevertheless enjoys a recovery possibility. If the jury finds that Dover is not entitled to contribution (hence, that no negligence on DB's part proximately caused Mrs. Roberts's death), but also finds that Dover's negligence proximately caused Mrs. Roberts's death, then DB's indemnification claim will rise to fill that just-evacuated legal space.

At that point the jury will be authorized to award DB "the costs and expenses incurred by [DB] in investigation and defense of claims arising from and related to the death of Elizabeth Roberts[.]" Doc. # 12 at 6 (Counterclaim relief). *Cf.* 63B AM.JUR.2D *Products Liability* § 1978 ("A number of jurisdictions follow the general rule that an indemnitee may recover from its indemnitor attorneys' fees, costs, and expenses incurred in defending against a products liability suit stemming from the actions of the indemnitor, provided it is established that the indemnitee was simply an innocent party in the chain of commerce, or that the indemnitee was held to be secondarily liable") (footnotes omitted). Those costs and expenses would include DB's defense of both the instant action as well as the State court, third-party action against it.

**1354**

### G. DB's Summary Judgment Motions

Based on the above analysis, DB's partial summary judgment "on [Dover's] theory that [DB] is vicariously liable for contribution," doc. # 21, must be granted to the extent that Dover fails to adduce evidence that DB's separate and independent acts of negligence proximately caused Mrs. Roberts's death. *St. Paul,* 209 Ga.App. at 185, 433 S.E.2d 112. To the extent that it can, Dover may pursue DB for one-half of its settlement costs.

DB also moves for partial summary judgment "on any claim that [DB] is liable for merely passive negligence." Doc. # 23. As contribution law makes no such distinction, this motion must be denied.

■■ Finally, DB moves for summary judgment on the theory that Mrs. Roberts assumed the risk of her own death, etc., thus absolving DB of any joint tortfeasor liability. Doc. # 19. There is much in the record to show that Mrs. Roberts knew the elevator was unreliable, its telephone had been turned off, and she did not even have to use the elevator that day, much less try and escape from it. *See* doc. # 25 ¶¶ 16–19. And, there is much to show that Dover arguably was more negligent than DB. DB's tenant, after all, hired Dover to ensure the elevator's safe operation. *Id.* ¶¶ 11–14.

But nothing in the record plainly and palpably shows that one actor's negligence supersedes another's. For example, Mrs. Roberts got stuck inside the elevator on a Friday night and had told her husband she would go out shopping after visiting the building that afternoon. Doc. # 32 at 19. She had no means of calling for help, and no indication that anyone for sure would be entering the building that weekend. She evidently panicked.

While DB could not be reasonably expected to know what Mrs. Roberts told her husband that day, it is fair to charge it with knowledge of the elevator's age and reliability problems, as well as its tenant's (Adams's) decision to cut off its telephone (again, *Gaffney* requires owners to be vigi-

lant about the condition of their buildings' elevators). At a minimum, then, it is fair to deem reasonably foreseeable to DB the prospect that someone could get stuck in its closet-sized elevator (*see* doc. # 20 exh. A) late on a Friday afternoon, alone in the building, with no elevator-telephone access, and, consequently, engage in risky escape behavior.

It is true that Mrs. Roberts evidently knew that the elevator had gotten stuck before (and thus had warning about such possibility). Doc. # 20 at 5–6. But that occurred infrequently (twice, *see* doc. # 25 ¶ 18), and no increasing likelihood factor revealed itself to her. Moreover, the evidence shows that others continued to use it and thus believe it was not hazardous. Doc. # 26 tab 1 at 218–19.

When all of this, including Dover's admitted negligence, *see* doc. # 18 at 14, is threaded through the extraordinary care standard that Georgia law imposes upon DB, *see Gaffney,* 213 Ga.App. at 654–55, 445 S.E.2d 771, only one reasonable conclusion emerges: a jury must make the call here.

■■ Finally, DB's duty to exercise extraordinary care toward Mrs. Roberts did not abrogate her own duty to exercise ordinary care for her own safety and avoid consequences caused by the negligence of another. *Cf. Knight v. Atlanta Transit Sys.,* 137 Ga.App. 667, 669, 224 S.E.2d 790 (1976) (That common carrier has duty to exercise extraordinary care does not abrogate requirement that passenger exercise ordinary care for his own safety to avoid consequences caused by the negligence of another); *Seaboard Air Line Ry. v. Cooper,* 20 Ga.App. 550, 553–55, 93 S.E. 281 (1917).

■■ Furthermore, if a plaintiff's assumption of a risk can extinguish another's liability—even for willful and wanton conduct—toward her, *see Muldovan v. McEachern,* 271 Ga. 805, 809, 523 S.E.2d 566 (1999), then the same must be said where a plaintiff, duty-bound to exercise

ordinary care for her own behalf, assumes a risk in the face of another's extraordinary duty of care toward her. The Court therefore will instruct the jury on these principles.

## III. *CONCLUSION*

The parties' briefs, as well as the above discussion, reflect the unfortunate fact that Georgia contribution/indemnity law is about as graspable as a greased elevator cable. Equity courts attempting to "do justice" create inconsistencies that legislatures attempt to address, often further complicating an area of law which cries out for simplification.

Plaintiff Thyssen Elevator Company, d/b/a Dover Elevator Company's (Dover's) request for oral argument (doc. # 29) is *GRANTED,* as is its motion for summary judgment (doc. # 32) to the extent set forth above. The Court *DENIES* defendant Drayton–Bryan Company's summary judgment motions docketed as 19 and 23, but conditionally *GRANTS* motion # 21.

In that the parties have filed their Consolidated Pretrial Order, doc. # 28, and trial is set for 7/17/00, doc. # 17, the parties are directed to file their proposed jury charges and any *in limine* motions by 5:00 p.m. on 7/10/00. Finally, the caption above has been amended to reflect the correct name of the plaintiff. *See* doc. # 28 ¶ 8. All subsequent filings shall conform.