## 44297. WOODS v. GIEDD.
### (356 SE2d 211)

CLARKE, Presiding Justice.

The issues in this case are twofold: 1) whether a copy of a will lost before the death of the testator may be admitted to probate under OCGA § 53-3-6; and 2) whether the evidence presented by appellees was sufficient to withstand a motion for summary judgment by appellant. OCGA § 53-3-6 provides: "If a will is destroyed without the consent of the testator or is lost or destroyed subsequent to the death of the testator, a copy of the will . . . may be admitted to probate. . . . In every such case, the presumption is that the will was revoked by the testator, and that presumption must be rebutted by proof."

Mr. Woods executed a will in 1983. There was testimony that two days before his death in 1985 he stated that he had a will and that it was located in his safe-deposit box. After Mr. Woods' death his widow opened the box in the presence of her sister and a bank officer. No will was found in the box. The bank officer's affidavit filed with appellant's motion for summary judgment indicated that Mr. Woods signed for access to the box on November 30, 1984, and that no one entered the box again until June 26, 1985, after his death.

Mrs. Woods, the widow and sole heir at law, filed a petition for an order of no administration necessary. Appellees, a niece and nephews of the deceased, filed a caveat to the petition and sought to have an unsigned copy of a will admitted to probate. The Probate Court of Pulaski County ordered that no administration was necessary. The propounders, appellees here, appealed to the Superior Court of Pulaski County. Mrs. Woods, the appellant here, moved for summary judgment. The trial court denied the motion, and we granted appellant's application for an interlocutory appeal.

1. We first consider the construction of OCGA § 53-3-6. Appellant argues that under the statute a copy of a will which was lost prior to the death of the testator may not be submitted for probate. Appellees, on the other hand, insist that a copy may be probated when the will was lost before the death of the testator. Appellees rely upon *Williams v. Swint*, 239 Ga. 66 (235 SE2d 489) (1977) and upon *Saliba v. Saliba*, 202 Ga. 791 (44 SE2d 744) (1947) and *Wood v. Achey*, 147 Ga. 571 (94 SE 1021) (1918) in urging this construction of the statute. *Williams v. Swint*, supra, contains language to the effect that "when a will has been lost or destroyed, whether before or after the death of the testator, there is a presumption of law that the testator destroyed it with the intention of revoking the will. . . ." Id. at 66. This in no way strengthens appellees' position that a copy of a will lost prior to death of the testator may be probated.

In *Wood v. Achey*, supra, the first headnote reads: "If a will be

lost or destroyed before or subsequently to the death or without the consent of the testator, a copy of the same may be admitted to probate and record in lieu of the original." The authority given to support this statement is the Civil Code of 1910, Section 3863, which provides: "If a will be lost or destroyed subsequently to the death, or without the consent of the testator, a copy of the same, clearly proved to be such by the subscribing witnesses and other evidence, may be admitted to probate and record in lieu of the original; but in every such case the presumption is of revocation by the testator, and that presumption must be rebutted by proof." This section differs from our present statute in that it could be read to allow the probate of a copy of a will lost prior to the death of the testator without his consent. This would be a strained reading of the section of the 1910 code. However, we need not wrestle with the interpretation in *Wood v. Achey*, supra, because the language of the statute on probate of a copy of a will is no longer ambiguous.

In *Saliba v. Saliba*, supra, the reference to *Wood v. Achey* relied upon by appellees occurs in a discussion of the propriety of a charge that the presumption in favor of the revocation of a will may be rebutted by evidence that the testator did not destroy the will or that if he did it was not with the intent to revoke it. The restatement of the language in *Wood v. Achey* that revocation may be rebutted ". . . among other ways, by proof that a will was lost or destroyed prior to the death of the testator without his consent . . ." appears in the context of a discussion on revocation by destruction of a will and the evidence necessary to rebut the presumption of revocation.

The plain meaning of the statute is that when a will is lost before the death of the testator, a copy may not be probated. Logic gives further support to this conclusion because of at least two propositions. First, if the will is lost before death, the testator has the opportunity to execute a new will. Second, if the statute cracks the door to the possibility of the probate of a copy each time a will cannot be found, the encouragement to litigation would be excessive. The construction applied here comports with the methods of statutory construction discussed in the special concurrence in *Dept. of Transp. v. City of Atlanta*, 255 Ga. 124, at 137 (337 SE2d 327) (1985).

2. The holding in Division 1 above sets the stage for deciding whether the evidence here demands a summary judgment against the propounders of the copy of the will. Under the statute there is a presumption of revocation when no original will is found, but that presumption may be rebutted by proof that the will was destroyed without consent of the testator before death or lost or destroyed after the death of the testator. The clear-cut question here is whether the propounders of the copy of the will offered any evidence that the will was lost after death so as to form a jury issue on that question. Mrs.

Woods asserts that her position is supported by the presumption and the testimony of the bank officer that the safe-deposit box had not been opened from the time of Mr. Woods' death until its entry by Mrs. Woods, her sister and the bank officer, at which time no will was found. Further evidence presented by Mrs. Woods was in the form of her testimony and her sister's affidavit to the effect that no will was found in the box. Standing alone, this evidence would demand a summary judgment for Mrs. Woods. It does not, however, stand alone because the propounders offered testimony that Mr. Woods stated two days before his death that he had a will and that it was located in the box. That testimony is some evidence that a will existed in the box two days before Mr. Woods' death. The bank officer's testimony that the box had not been opened from that time until it was opened in her presence is some evidence that the will could not have been removed from the box between the time of Mr. Woods' statement and the subsequent opening. Taken together, these bits of evidence raise a question of whether the will was in the box at the time it was opened by Mrs. Woods, her sister and the bank officer. Each of them say that it was not and the jury is entitled to consider their testimony. The evidence concerning the presence of the will two days before the death coupled with no opening of the box until the entry by the witnesses presents at least some evidence which the jury may consider in opposition to the presumption of revocation and the testimony of the other witnesses. The effect is that a genuine issue of material fact exists and that a summary judgment is inappropriate.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who dissent.*

WELTNER, Justice, dissenting.

I am in full agreement with the majority's interpretation of OCGA § 53-3-6.

I disagree, however, with the holding in Division 2, and suggest that the evidence indicated by the majority as sufficient to create a genuine issue of fact could not support a verdict in the favor of the appellees. The evidence absolutely excludes the possibility that there could have been a will in the safe deposit box at the time of the decedent's death.

For appellants to prevail, then, a jury must infer from "these bits of evidence" (the majority's phrase):

(a) that there was, in fact, a will in the safe deposit box, as stated by Mr. Woods;

(b) that within two days of his death, the will was removed from the safe deposit box; and

(c) that, after his death, the will became lost.

These hypotheses simply cannot stand in the light of the undis-

puted testimony that the safe deposit box had not been entered since 1984, the year preceding Mr. Woods' death.

I am authorized to state that Justice Smith joins in this dissent.

DECIDED JUNE 4, 1987 —
RECONSIDERATION DENIED JUNE 17, 1987.

*Sylvester & Assoc., Chuck Sylvester, Sell & Melton, Edward S. Sell, Jr., Buckner F. Melton, Lori L. Chapman,* for appellant.
*W. Edward Meeks, Jr.,* for appellee.

