## S96A1263. HORTON v. BURCH.
(471 SE2d 879)

HUNSTEIN, Justice.

In May 1992, Mary Frances Burch Horton executed an original will and two duplicates thereof,[1] devising all of her real property to a neighbor, Earnest Freeman. All three documents were executed with the same formality and contain the original signatures of the testator and witnesses. Ms. Horton took the original and one duplicate while her attorney kept the remaining duplicate. In 1993, Ms. Horton executed a codicil to her will in order to leave a table to her church. Shortly after her death in June 1994, her duplicate of the will was found in her safety deposit box, but the original will and codicil have not been located. The testator's nephew, Burch, who was the executor named in the will, offered the duplicate for probate; William Horton, the testator's son, caveated on the basis that the will was not original. The probate court denied the executor's petition and appeal was made to the Superior Court of Twiggs County. The trial court denied Horton's motion for summary judgment, citing OCGA § 53-2-74 and *King v. Bennett*, 215 Ga. 345 (110 SE2d 772) (1959) for the proposition that there "must first be evidence of the condition of the [original] will which raises the presumption [that the testator revoked the original will]" and finding that there was insufficient evidence to

---

[1] The original will was bordered with a line in red ink; the border line of the copies was in black.

show as a matter of law that the testator destroyed the original will with the intent to revoke it. We granted Horton's application for interlocutory review of the trial court's order. Because we find that the trial court failed to recognize that the "condition of the will" in this case was that of a lost will so that a presumption of revocation arose pursuant to the express terms of OCGA § 53-3-6, we reverse.

OCGA § 53-2-74 addresses express revocation and provides that a will may be expressly revoked "by any destruction or obliteration of an original will or a duplicate thereof." OCGA § 53-3-6 addresses lost wills and provides that if a will is lost during the testator's lifetime, destroyed without the consent of the testator during his lifetime, or lost or destroyed subsequent to the death of the testator, a copy of the will, clearly proved to be such by the subscribing witnesses and other evidence, may be admitted to probate and record in lieu of the original. Id. at (a). Both statutes address problems that arise when there is an executed original will and one or more copies thereof: OCGA § 53-2-74 provides the procedure to be followed where there is a material alteration to either the original will or a copy; OCGA § 53-3-6 provides the procedure to be followed where the original will is lost but a copy is available. No distinction is drawn in either statute among the types of copies that might be made, e.g., carbon copies, photo copies, computer-generated copies, etc. Nor is any distinction drawn among copies that are unsigned, signed only by the testator, or fully executed with the same formality as an original will. A review of Georgia's statutory scheme regarding the execution and revocation of wills reveals that all copies of an "original" will occupy the same legal status notwithstanding the manner in which the copy was executed or reproduced. Thus, there can be only one "legal declaration of a person's intention regarding the disposition of his property after his death," OCGA § 53-2-1, albeit an individual's declaration of that intention may be set forth in more than one document. See, e.g., OCGA § 53-2-5 (codicils); OCGA § 53-2-75 (implied revocation). We disapprove the use of the term "duplicate original" as it misleadingly implies there can be more than one original will and fails to comport with Georgia's statutory scheme of recognizing that an individual has only one will, no matter how many copies thereof that may be executed.[2]

---

[2] The facts in the instant case serve to support the commentary in Redfearn, Wills and Administration in Georgia (5th ed.), § 74 that the practice of attorneys who seek to alleviate the problem of inadvertent loss or destruction of a will by having the testator and witnesses execute a duplicate will for storage in a separate secure place leads to the unintended result of "creat[ing] more problems than it solves."

The propounder of the duplicate must overcome the presumption of revocation that arises when the will in the testator's possession cannot be found. The fact that the copy offered for probate is a duplicate instead of an unexecuted carbon copy or pho-

We do not agree with appellee that *King v. Bennett*, supra, supports drawing an artificial distinction between "duplicates" of wills offered for probate and "duplicate originals" of wills offered for probate. In *King v. Bennett*, the original will was found cancelled in material part (torn into four pieces with the signature removed) but an undamaged duplicate also existed, with identical terms and with original signatures. In an initial paragraph setting forth uncontested evidence and the propounder's argument, we noted that the propounder sought to probate the duplicate "as an original will," id. at 348 and stated that

> [s]ince the execution in duplicate was clearly proved, and the document was signed and attested as the will of the deceased, it should properly be admitted to probate, unless it was revoked by the testat[or] during her lifetime.

Id. This Court then analyzed the case under the predecessor to OCGA § 53-2-74 (Code Ann. § 113-404); applied the presumption of revocation that arises when an original will is found cancelled or obliterated in material part, *McIntyre v. McIntyre*, 120 Ga. 67, 70 (47 SE 501) (1904); and concluded that the "evidence of the condition of the *original* will . . . raised a presumption that the cancellation was done by the testa[tor] and that she intended to revoke the will." (Emphasis supplied.) Id. at 349.

A review of the opinion in *King v. Bennett* thus reveals that, notwithstanding the inapt language in the introductory paragraph regarding a duplicate will sought to be propounded as an original, the appeal was properly analyzed and resolved under the statutory and case law applicable to copies of wills where the original is found in an obliterated condition. OCGA § 53-2-74. We cannot read *King v. Bennett* as creating a new rule of law regarding duplicates executed with the same formality as originals and disapprove any interpretation of *King v. Bennett* that would draw such a distinction.[3]

---

tocopy will not prevent the presumption from arising, while the testator's knowledge of the duplicate's existence might induce greater carelessness in the handling of the will in his own possession. It is certainly a good practice to have a copy of the will, and in the event the copy must be offered for probate in lieu of a lost or destroyed will, the copy should be conformed by typing in the testator's and witnesses' signatures, but there is little justification for having two identical wills executed.
(Footnotes omitted.) Id. at p. 139.

[3] We also find no merit in the argument that the concluding phrase in this introductory paragraph in *King v. Bennett* ("unless it was revoked by the testat[or] during her lifetime") constituted a holding that the burden is on a caveator to prove that a will was destroyed or obliterated by the testator with the intent to revoke. *King v. Bennett* did not change the rule that a presumption of revocation arises from the destruction or obliteration of a material part of a will or duplicate of a will and that the burden of proof to rebut the presumption

Unlike the situation in *King v. Bennett*, supra, the original will executed by Ms. Horton has not been located. It is lost.[4] Therefore, reference must be made to OCGA § 53-3-6, which applies whenever a will is lost during the testator's lifetime, id. at (a) (1);[5] destroyed without the consent of the testator during the testator's lifetime, id. at (a) (2); or lost or destroyed subsequent to the death of the testator. Id. at (a) (3). OCGA § 53-3-6 allows the admission to probate of copies of wills clearly proven to be such by the evidence, id. at (a), subject in every case to the presumption in subsection (b) that the will was revoked by the testator. That presumption of revocation must be rebutted with clear and convincing proof. Id. As is consistent with OCGA § 53-2-74, the propounder of the will under OCGA § 53-3-6 carries the burden of overcoming the presumption that the original will was revoked. *Lyons v. Bloodworth*, 199 Ga. 44, 48 (1) (33 SE2d 314) (1945); see also *Hill v. Cochran*, 258 Ga. 473, 474 (1) (371 SE2d 94) (1988).

Because a presumption arises pursuant to the express language in OCGA § 53-3-6 that the will was revoked by the testator in those instances where, as here, the condition of a will cannot be ascertained because the will is uncontrovertedly lost, it follows that the trial court erred as a matter of law when it held that there must first be evidence of the condition of the will before the presumption of revocation is raised. Although the parties assert arguments about the evidentiary status of this case, the trial court's ruling was limited to the legal issue we have here reversed and did not reach the merits of the parties' arguments regarding whether a material issue of fact remains to rebut the presumption of revocation. Accordingly, we do not address the parties' evidentiary arguments. We reverse the trial court's judgment and remand the case to the trial court for consideration of Horton's motion for summary judgment in a manner consistent with our holding herein.

*Judgment reversed and remanded. All the Justices concur.*

---

falls on the propounder of the will, *McIntyre v. McIntyre*, supra, but rather expressly applied that rule to the case and concluded it applies to multiple copies as well as a single copy. *King v. Bennett*, supra at 348.

[4] We recognize that when a party interposes a caveat to probate on the basis that the will is not the original, there may be instances where a fact issue is created whether or not the document presented for probate is the original will. That, however, is not the situation in the instant case. The record reflects that the executor amended his petition to reflect that the document he propounded was a duplicate and it is uncontroverted that the original will is lost.

[5] The language in (a) (1) was added in the 1991 amendment of the statute, Ga. L. 1991, p. 394, § 2, in order to supersede this Court's holding in *Woods v. Giedd*, 257 Ga. 152 (1) (356 SE2d 211) (1987) that when a will is lost before the death of the testator, a copy of the will may not be probated. 8 GSU L. Rev. 212 (1992).

DECIDED JULY 1, 1996.

*Hicks & Massey, William E. Hicks, Frederick V. Massey,* for appellant.

*Williams, Sammons & Sammons, Walter G. Sammons, Jr., Nelson, Gillis & Smith, James F. Nelson, Jr.,* for appellee.