A04A0648. KELLETT v. KLEIN et al.
(600 SE2d 686)

PHIPPS, Judge.

Samuel B. Kellett, general partner of Fort Worth Medical Investors (FWMI), appeals the trial court's order requiring him to pay certain preferred returns to FWMI's limited partners in accordance with a previous court order. Kellett argues that the court failed to give him adequate notice and an opportunity to respond before entering

---

[38] *Mobil Oil Corp. v. Higginbotham*, 436 U. S. 618, 625 (II) (98 SC 2010, 56 LE2d 581) (1978).

the second order, and that there is no evidence in the record to support the second order. Because these arguments lack merit, we affirm.

In 1983, Kellett created FWMI to operate a nursing home in Texas. Thirty-five investors ultimately purchased limited partnership interests in FWMI. A private placement memorandum detailing the offering of the FWMI limited partnership interests stated:

> The first $174,930 of cash flow generated by the partnership each year will be distributed to the limited partners (i.e., a 14% preferred return). . . . The management fee payable to the operator of the property will be subordinated to the limited partner's preferential cash flow distribution, i.e., the limited partners will be entitled to receive their $174,930 preference prior to the operator of the property . . . receiving any portion of its management fee. . . .

The limited partnership agreement provided that the limited partners would receive "[t]he first $174,930 of *net cash flow* available for distribution each year."[1] The agreement defined "net cash flow" as

> net cash receipts of the Partnership derived from operation of the property, less (i) operating expenses of the Partnership . . . , (ii) the principal and interest payments on the Partnership loans, and (iii) such reasonable reserves as may be established by the General Partner.

In July 1997, Fred and Patricia Klein, two of the limited partners, sued Kellett for underpayment of their preferred return, among other things. The Kleins alleged that Kellett had paid excessive fees to a company wholly owned by his brother and himself to manage the nursing home, but had not paid the limited partners their preferred return. The trial court certified the suit as a class action on behalf of all FWMI limited partners.

In March 2000, the court granted partial summary judgment to the limited partners. It ruled that under the private placement memorandum and partnership agreement, the limited partners were entitled to a 14 percent preferred return on their investment (as opposed to 12 percent, as Kellett had argued), and it ordered Kellett to pay them $536,666.56 for returns they should have been paid through December 31, 1996. The court also ruled that Kellett could not charge or accrue management fees to the books of FWMI in years in which the limited partners had not received their preferred return.

---

[1] (Emphasis supplied.)

Finally, the court ordered Kellett to pay the limited partners a 14 percent preferred return prospectively, "to the extent that funds are available to do so in accordance with the partnership agreement." Kellett appealed the court's order, but in February 2002, we affirmed it without opinion.

Meanwhile, in August 2001, the limited partners filed a "Motion to Have Defendant Samuel B. Kellett Held in Contempt." They asserted that Kellett was violating the partial summary judgment order by paying management fees without first paying their preferred returns. In August 2002, the court heard the contempt motion, and in February 2003, it issued a detailed order granting the motion. The court found that from 1997 to 2001, Kellett had not paid preferred returns to the limited partners before paying management fees, as required by the partial summary judgment order. The court further found that, based on FWMI's tax returns, Kellett owed the limited partners $983,925 plus interest. Kellett moved for reconsideration, but the court denied the motion. Kellett now appeals.

1. Kellett argues that the trial judge improperly converted the limited partners' contempt motion to one for summary judgment without giving him proper notice and an opportunity to be heard. The record belies this claim.

First, the judge did not treat the motion as one for summary judgment. Although Kellett cites one statement by the judge to that effect in the 146 pages of the transcript,[2] the transcript as a whole plainly shows that the judge treated the motion as one to enforce the previous partial summary judgment order.

Second, Kellett had sufficient notice of the issues raised in the motion. It was filed a full year before the court heard it. Although styled as a motion for contempt, it did not seek any criminal or civil sanctions against Kellett. Rather, it asked the court to order him to comply with the partial summary judgment order by, among other things, paying the limited partners any outstanding preferred return amounts for periods beginning in 1997. The motion clearly spelled out the relief sought by the limited partners. Moreover, after the motion was filed, counsel for the limited partners wrote to Kellett's counsel outlining the evidence he expected his expert witness to offer in support of the motion. The court ordered a rule nisi one week before the hearing, ordering Kellett to appear and show cause why he should not be held in contempt. And at the hearing, Kellett's counsel agreed with the judge that "[e]verybody knows what the issues are."

---

[2] The judge told Kellett's counsel that he could file supplementary evidence and that the judge "would treat it . . . like a summary judgment because if you have got to get some affidavits in, get them in." In our view, this statement merely indicated that the judge would permit counsel to file affidavits that conformed to the requirements of OCGA § 9-11-56 (e).

Third, Kellett was given ample opportunity to respond to the motion. Ten months before the hearing, he filed a brief in opposition to the motion. He argued at the hearing, however, that the issues had not been adequately briefed. The judge proceeded with the hearing, but agreed to allow Kellett to file a supplemental brief, including supporting affidavits and depositions, after the hearing. Kellett did file a supplemental brief, but did not submit any additional evidence, even though six months passed before the judge ruled on the contempt motion.

Despite the multiple opportunities and abundant time he was given to respond to the issues clearly raised by the motion, Kellett complains that the judge unfairly broke a promise to allow him a second evidentiary hearing. At the hearing, the judge stated, "If you think there is a need for a further hearing on [the motion], let me know." The judge did not, however, promise to grant a request for such a hearing.[3] Kellett requested a second hearing, but he did not indicate why such a hearing was necessary, what evidence he intended to present, or why such evidence could not be presented through affidavits and depositions, as the judge had asked. In fact, when Kellett finally *did* present additional evidence — attached to a reply brief in support of his motion for reconsideration of the judge's order granting the contempt motion — it was in the form of an expert witness affidavit, which presumably could have been submitted earlier without the necessity for an evidentiary hearing. Thus, we find no error in the judge's failure to grant a second hearing.

2. Kellett contends that insufficient evidence supported the judge's ruling that the limited partners were entitled to preferred returns for the period 1997 to 2001. Specifically, he claims that there was no proof that any management fees actually had been paid from FWMI's operating expenses or that FWMI had a net cash flow during the relevant period.

If there is any evidence to support a trial court's determination that its order has been violated, we will affirm that determination on appeal.[4] "The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion."[5]

Before the hearing, Kellett submitted an affidavit stating that the nursing home was currently being managed "for a reasonable fee"

---

[3] In fact, the judge explained that "judicial time is at a demand, a premium" and that "if I have to reschedule [a hearing], [there] is no telling when it will happen or how long I will be able to give you."

[4] See *In re Waitz*, 255 Ga. App. 841, 842 (567 SE2d 87) (2002).

[5] (Citations and punctuation omitted.) *Hamilton Capital Group v. Equifax Credit &c.*, 266 Ga. App. 1, 4 (2) (596 SE2d 656) (2004).

that he had been able to negotiate. Likewise, at the hearing, Kellett's counsel stated that management fees had been paid, of necessity, because "nobody is going to manage this facility unless they are getting paid." The limited partners' expert witness, a certified public accountant, testified that, based on FWMI's tax returns, the partnership had generated sufficient revenue to pay the management fees — and therefore to pay the limited partners' preferred returns. Thus, the record contains evidence to support the trial court's ruling, and we find no abuse of discretion. Nor do we find that the court applied an improper definition of "net cash flow," as the order defined that term almost exactly as the partnership agreement did.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED MAY 26, 2004 —
RECONSIDERATION DENIED JUNE 10, 2004 — 

*Greenberg Traurig, Mark G. Trigg*, for appellant.
*Pendergast & Jones, Ezra B. Jones III*, for appellees.