A06A1641. KELLETT et al. v. KUMAR et al.
(635 SE2d 310)

BLACKBURN, Presiding Judge.

Following a jury trial, defendants Samuel Kellett and Stiles Kellett, Jr., appeal the verdict and judgment entered against them and in favor of plaintiffs Surender Kumar, Veeni Kumar, and Ellen Troup, awarding the plaintiffs $1.6 million and $100,000 in attorney fees for the Kelletts' breach of a partnership agreement. The Kelletts contend that the trial court erred in denying their motion for judgment notwithstanding the verdict (j.n.o.v.), arguing that no evidence supported the jury's damages award. They further contend that a new trial should have been granted because the trial court erred in admitting evidence of other litigation, erred in excluding evidence

---

concerning plaintiffs' efforts to liquidate their partnership interests, and because of gross juror misconduct. For the reasons set forth below, we affirm.

Construed in favor of the verdict, *Jordan v. Stephens*,[1] the evidence shows that in 1980, plaintiffs invested and became limited partners in Westbury Associates, an entity formed by the Kelletts to own and operate a nursing home in Houston, Texas. At that time, the parties executed a limited partnership agreement, wherein the Kelletts, as general partners, received two-thirds of an interest in the partnership, and the plaintiffs, as limited partners, received collectively one-third of an interest. Over the course of the next 14 years, the partnership performed exceptionally well as an investment vehicle for all parties.

In 1994, the Kelletts decided to consolidate their business holdings under their wholly owned corporation, Convalescent Services, Inc. (CSI). Pursuant to this decision, and in accordance with the terms of the partnership agreement, on April 14, 1994, the Kelletts sent plaintiffs letters advising them of the Kelletts' intent to withdraw as general partners in Westbury and transfer their general partnership interest to CSI. The letters included forms requesting plaintiffs' signed consent to the Kelletts' withdrawal. Although plaintiffs never signed or returned the consent forms, on September 1, 1994, the Kelletts transferred their interest in Westbury to Westchester Health Care, Ltd., which was wholly owned by CSI. On December 15, 1994, the Kelletts again sent letters to plaintiffs requesting that they sign the attached consent forms regarding the Kelletts' withdrawal and the substitution of CSI as the sole general partner. The plaintiffs wrote in response that they did not consent to the Kelletts' withdrawal or to any substitution of the general partners. Nevertheless, in January 1995, CSI executed a merger agreement with a third entity, Mariner Health Group (Mariner), and transferred its two-thirds interest in the partnership to Mariner.

In 1996, negotiations ultimately failed, and plaintiffs filed suit against the Kelletts and Mariner for breach of the partnership agreement, breach of fiduciary duty, and tortious interference. Plaintiffs' complaint also sought attorney fees and punitive damages. After filing an answer, the Kelletts and Mariner moved for partial summary judgment on the ground that plaintiffs had no damages stemming from the Kelletts' withdrawal from the partnership. Plaintiffs also moved for partial summary judgment, seeking a determination that the Kelletts' nonconsensual withdrawal dissolved and terminated the partnership as of September 1, 1994, and thus the Kelletts

---

[1] *Jordan v. Stephens*, 221 Ga. App. 8, 10 (3) (470 SE2d 733) (1996).

were liable for breach of the partnership agreement. The trial court denied the Kelletts' and Mariner's motion but granted plaintiffs' motion for partial summary judgment, ruling that for the purposes of the continuing litigation and valuation of plaintiffs' limited partnership shares, the partnership had been dissolved on September 1, 1994, by the Kelletts' withdrawal and breach of the partnership agreement. In an unpublished opinion, this Court affirmed the trial court's ruling.

In November 1999, shortly before the case was to be tried, plaintiffs were granted a continuance in order to amend their complaint to seek liquidation of the partnership, which they did. In January 2000, however, Mariner filed for bankruptcy and the case was stayed for nearly three years. Mariner emerged from bankruptcy in January 2003, and shortly thereafter, the plaintiffs and Mariner came to a settlement, resulting in Mariner's dismissal. The case was tried in April 2005, after which the jury awarded the plaintiffs $1.6 million for the Kelletts' breach of the partnership agreement and $100,000 for attorney fees. The jury also found that no damages for breach of fiduciary duty or punitive damages were warranted. Subsequently, the Kelletts moved for a j.n.o.v., or, in the alternative, for a new trial, but were unsuccessful. This appeal followed.

1. The Kelletts contend the trial court erred in denying their motion for j.n.o.v., arguing that the jury's damages award was not supported by competent evidence. We disagree. A directed verdict or j.n.o.v. is required where there is no conflict in the evidence as to any material issues and the evidence (construed in favor of the nonmovant) demands a particular verdict. *Richards v. Wadsworth.*[2] "Thus, the standard of appellate review of a trial court's denial of a motion for a directed verdict or of a motion for j.n.o.v. is the any evidence test." *Cole v. Webb.*[3]

Contrary to the Kelletts' assertions, there is evidence of record that supports the jury's award of $1.6 million in damages for the Kelletts' breach of the partnership agreement. According to paragraph 23 of the partnership agreement,

> [u]pon the termination of the Partnership, its affairs shall be concluded in the following manner: (a) The general partner shall proceed to the liquidation of the Partnership and the proceeds of such liquidation shall be applied, and distributed in the following order or priority . . . (3) to the Partners as provided in paragraph 9 hereof.

---

[2] *Richards v. Wadsworth*, 230 Ga. App. 421, 422 (1) (496 SE2d 535) (1998).
[3] *Cole v. Webb*, 267 Ga. App. 174, 176 (1) (598 SE2d 886) (2004).

Given the claim that the partnership should have been dissolved and liquidated at the time the Kelletts withdrew, the plaintiffs' expert testified that damages could be calculated by taking the value of their one-third interest in the partnership and estimating the increase in that value if invested in a manner similar to plaintiffs' other investments. Using this method of calculation, plaintiffs' expert estimated plaintiffs' damages to be approximately $4.1 million. Based on this evidence alone, the $1.6 million jury award was well "within the range of damages established by the evidence and will not be disturbed." *Watkins & Watkins, P.C. v. Williams.*[4]

The Kelletts argue that plaintiffs' expert should not have been allowed to use the estimated value of plaintiffs' one-third interest in the partnership in order to give his opinion on damages. In support of this argument, the Kelletts rely on comments made by the trial judge who originally presided over this case during a 1999 hearing on motions in limine. In that hearing, the judge stated that she did not believe that the value of the partnership was a proper measure of damages because plaintiffs had not included claims for dissolution and liquidation in their complaint. However, based on these comments, the plaintiffs sought and were granted a continuance in order to amend their complaint to include claims for dissolution and liquidation, which they did. Moreover, the judge who ultimately presided over the trial of this case specifically overruled the Kelletts' objection to plaintiffs' expert using valuation of the partnership interests in his damages calculations. Thus, even if the previous judge's comments regarding the determination of damages could be construed as an order, such an order, which was never addressed by an appellate court, was not the law of the case and the current judge was not bound by it. See *Potts v. UAP-GA AG CHEM, Inc.*[5]

The Kelletts further argue that their motion for j.n.o.v. should have been granted because the jury's $1.6 million award does not directly correspond to any specific testimony or documentary evidence. This argument is unsupported by law and is without merit. "Indeed, we have often upheld jury verdicts that awarded less than the amount proven at trial, holding only that the amount must be within the range of damages shown, not that the amount may only be a lesser amount if calculated according to some proven formula." *Beasley v. Wachovia Bank.*[6] See, e.g., *Willis Mining, Inc. v. Noggle*[7] (jury award of $300,000 upheld as within range of damages where

---

[4] *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646, 650 (8) (518 SE2d 704) (1999).

[5] *Potts v. UAP-GA AG CHEM, Inc.*, 256 Ga. App. 153, 157 (2) (567 SE2d 316) (2002).

[6] *Beasley v. Wachovia Bank*, 277 Ga. App. 698, 699 (1) (a) (627 SE2d 417) (2006).

[7] *Willis Mining, Inc. v. Noggle*, 235 Ga. App. 747, 751 (4) (509 SE2d 731) (1998).

plaintiff showed damages of $532,000 with no formula for lower figure); *Brock v. Douglas Kohoutek, L.P.*[8] (jury award of $575,000 upheld despite some evidence supporting request of $1 million); *Latex Equip. Sales &c. v. Apache Mills, Inc.*[9] (jury award of $158,541 upheld as within the range of proven damages of $568,771). "If the [Kelletts] desired an explanation of the basis for the damage award, they should have objected to the verdict form, which allowed the jury free rein to set damages. Their failure to do so while the jury was still present and available to reform the verdict waived any objection." (Citation omitted.) *Brock*, supra, 225 Ga. App. at 109 (3). Because some evidence supported the jury's damages award to plaintiffs, the trial court did not err in denying the Kelletts' motion for j.n.o.v.

2. The Kelletts contend that they should have been granted a new trial because the trial court erred in admitting evidence of Samuel Kellett's involvement in other lawsuits. We disagree.

Absent clear abuse, the trial court's exercise of discretion in admitting or refusing to admit evidence is entitled to deference. *Cooper Tire &c. Co. v. Crosby*.[10] See also *Kothari v. Patel*.[11] In civil suits, "similar acts or omissions on other and different occasions are not generally admissible to prove like acts or omissions at a different time or place. Nevertheless, such evidence may under certain limited circumstances be admissible to establish, among other things, a course of conduct or bad faith." *Wood v. D. G. Jenkins Homes, Inc.*[12] In addition, "[p]rior similar acts may be admitted for impeachment purposes as well as for punitive damages." *Langlois v. Wolford*.[13] See also *U. S. Fidelity &c. Co. v. Paul Assoc.*[14]

Here, following a hearing on motions in limine, plaintiffs were allowed to introduce evidence regarding two other lawsuits in which Samuel Kellett was involved. Plaintiffs showed that *Kellett v. Klein*[15] also involved Surender Kumar as a member of a class of plaintiffs who were suing Samuel Kellett for the breach of a partnership agreement and breach of fiduciary duties. This other partnership agreement also involved a nursing home in Texas, as well as accusations that Kellett violated the plain language of the agreement by failing to pay the limited partners their preferred returns. In light of the similarities

---

[8] *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 108-109 (3) (483 SE2d 342) (1997).

[9] *Latex Equip. Sales &c. v. Apache Mills, Inc.*, 225 Ga. App. 516, 519 (1) (d) (484 SE2d 274) (1997).

[10] *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001).

[11] *Kothari v. Patel*, 262 Ga. App. 168, 171 (1) (585 SE2d 97) (2003).

[12] *Wood v. D. G. Jenkins Homes, Inc.*, 255 Ga. App. 572 (565 SE2d 886) (2002).

[13] *Langlois v. Wolford*, 246 Ga. App. 209, 213 (2) (b) (539 SE2d 565) (2000).

[14] *U. S. Fidelity &c. Co. v. Paul Assoc.*, 230 Ga. App. 243, 245 (1) (496 SE2d 283) (1998).

[15] *Kellett v. Klein*, 267 Ga. App. 749 (600 SE2d 686) (2004).

between the *Klein* matter and this case, the trial court did not abuse its discretion by admitting the former case as evidence demonstrating Kellett's course of conduct. See *Kothari*, supra, 262 Ga. App. at 171 (1).

The second lawsuit mentioned at trial, *Famiglietti v. Brevard Med. Investors*,[16] also involved a breach of contract and was introduced by plaintiffs for impeachment purposes. During plaintiffs' cross-examination of him, Samuel Kellett stated that the present case and the *Klein* case were the only two lawsuits in which he had been involved in over thirty years and further implied that the fact that plaintiffs in both cases were represented by the same counsel was no coincidence. In order to refute Kellett's implication, plaintiffs introduced evidence regarding the *Famiglietti* matter, a case also regarding an agreement to develop a nursing home but which did not involve plaintiffs' current counsel. Given that prior similar acts may be admitted for impeachment purposes, the trial court did not abuse its discretion by allowing plaintiffs to impeach Kellett's testimony via questions regarding the *Famiglietti* case. See *Langlois*, supra, 246 Ga. App. at 213 (2) (b).

3. The Kelletts contend that they should have been granted a new trial because the trial court erroneously characterized evidence of the plaintiffs' attempts to liquidate their interests in the partnership as evidence of settlement negotiations and thus excluded it. We disagree.

Pursuant to OCGA § 24-3-37, "admissions or propositions made with a view to a compromise are not proper evidence." (Punctuation omitted.) *Mortensen v. Fowler-Flemister Concrete.*[17] See also *Computer Communications Specialists v. Hall.*[18] "The purpose of OCGA § 24-3-37 . . . is to encourage settlements and protect parties who freely engage in negotiations directed toward resolution of lawsuits." *Graves v. Graves.*[19] See also *Mableton Parkway CVS v. Salter.*[20]

Prior to Mariner's bankruptcy, the plaintiffs, the Kelletts, and Mariner engaged in discussions wherein Mariner and the Kelletts offered the plaintiffs $4 million for their partnership interests. Plaintiffs' counsel memorialized this offer in a letter to Mariner's counsel in which he promised to inform his clients of the offer. The letter also inquired as to whether Mariner would accept service of plaintiffs'

---

[16] *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164 (397 SE2d 720) (1990).

[17] *Mortensen v. Fowler-Flemister Concrete*, 252 Ga. App. 395, 397 (4) (555 SE2d 492) (2001).

[18] *Computer Communications Specialists v. Hall*, 188 Ga. App. 545, 546 (1) (373 SE2d 630) (1988).

[19] *Graves v. Graves*, 252 Ga. 27, 28 (1) (310 SE2d 901) (1984).

[20] *Mableton Parkway CVS v. Salter*, 254 Ga. App. 162, 165 (2) (561 SE2d 478) (2002).

complaint but added that "[s]ervice of the complaints is not intended to chill any settlement talk between the parties."

The letter from plaintiffs' counsel notwithstanding, the Kelletts argue that the attempts to purchase plaintiffs' partnership interests did not constitute settlement negotiations and evidence of such attempts should have been admitted in order to allow the Kelletts to refute the allegation that plaintiffs were not provided the opportunity to liquidate their interests. However, the Kelletts' contention that these discussions did not constitute settlement negotiations is further belied by Samuel Kellett's deposition testimony, in which he clearly states that payment for plaintiffs' partnership interests was contingent upon the lawsuit being dropped. Accordingly, the trial court did not abuse its discretion in finding that discussions regarding the offer to purchase plaintiffs' partnership interests constituted settlement negotiations and excluding those discussions from evidence. See *Mortensen*, supra, 252 Ga. App. at 397-398 (4).

4. The Kelletts further contend that they should have been granted a new trial because gross juror misconduct compromised their right to due process of law. In conjunction with their motion for j.n.o.v., or, in the alternative, for a new trial, the Kelletts filed the affidavits of three members of the jury. All three affidavits stated that a specific member of the jury decided from the very beginning that the plaintiffs should prevail. Based on that belief, the juror improperly commented on each witness' testimony and refused to participate in the jury's deliberations. The Kelletts argue that such misconduct prejudiced their case to the extent that they were deprived of a fair trial. We disagree.

"[M]otions for new trial because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. Unless there is abuse of discretion, the appellate court will not upset the trial judge's determination." (Punctuation omitted.) *Riddle v. Beker*.[21] With regard to such alleged misconduct, OCGA § 9-10-9 provides that "[t]he affidavits of jurors may be taken to sustain but not to impeach their verdict." Exceptions to OCGA § 9-10-9 apply only in criminal cases in "certain very limited occasions where human life or liberty sways in the balance. But such compelling personal interests of life and liberty rarely are at issue in civil litigation and are not so at issue in this case." *Perryman v. Rosenbaum*.[22] Here, the jurors' affidavits filed by the Kelletts constitute an attempt to impeach the jury's verdict in the exact manner prohibited by OCGA § 9-10-9 and thus

[21] *Riddle v. Beker*, 232 Ga. App. 393, 394 (501 SE2d 893) (1998).
[22] *Perryman v. Rosenbaum*, 205 Ga. App. 784, 787 (3) (423 SE2d 673) (1992).

did not warrant consideration. Accordingly, the trial court did not abuse its discretion in denying the Kelletts' motion for new trial.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 20, 2006 —
RECONSIDERATION DENIED AUGUST 15, 2006 — 

*Decker, Hallman, Barber & Briggs, Richard P. Decker, Stacy E. Hyken*, for appellants.

*Pendergast & Jones, Ezra B. Jones III*, for appellees.