## S07A1417. MORRISON v. MORRISON.
(655 SE2d 571)

BENHAM, Justice.

This is an appeal from a judgment rejecting caveats to a will and admitting the will to probate. Following the death in 2004 of W. Lee Morrison, Jr. (hereinafter, Testator), his 1998 will was propounded by the executor named in the will, Testator's son Ralph, the appellee herein. Testator's son, Alexander, the appellant herein, filed a caveat, as did a guardian ad litem representing Testator's incapacitated son James. The will provided significant benefits to appellee, created trusts for the benefit of two of the Testator's four sons, appellant and Lee, and did not provide for James.

The issues addressed at trial were undue influence and revocation. The claim of undue influence was based on appellee's alleged role in selecting the attorney who drafted the 1998 will and his alleged participation with that attorney in preparing the will. The revocation claim was based on documents showing the Testator's planned execution of a new will more favorable to appellant and his brother Lee than was the 1998 will. During the trial of the caveats, the issue of revocation was decided in favor of appellee by the grant of summary judgment, and a jury decided the undue influence issue in appellee's favor. Appellant appeals from the judgment entered for appellee.

1. At the beginning of the second day of trial, appellant moved for a mistrial on the basis of his contention the trial court had expressed opinions on what the evidence had proved and on the credibility of witnesses in violation of OCGA § 9-10-7, which provides in pertinent part as follows: "It is error for any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved." Our review of the transcript persuades us the trial court did not violate OCGA § 9-10-7.

The statements by the trial court which appellant contends amounted to comments on the evidence occurred in the course of cross-examination by appellant's counsel of the attorney who drafted the will at issue. While questioning the witness about Testator's intent in limiting distributions to appellant and his brother Lee to income from the estate, appellant's counsel repeatedly asked whether different provisions could have been made, prompting the trial court to intervene in an effort to limit counsel to relevant issues and to prevent counsel from asking the same question multiple times with slight changes in wording. When appellant's counsel persisted in asking questions about a contradiction between the witness's deposition testimony and his testimony at trial after the witness had already addressed the contradiction, the trial court sought to prevent counsel from arguing with the witness. The trial court stopped

counsel from questioning the witness about a provision in a previous will of Testator's which was not carried over into the will at issue. Contrary to appellant's assertion, the remarks were not directed to the evidence or to the credibility of witnesses, but to the conduct of the cross-examination by appellant's counsel, and were rulings on objections or sua sponte efforts by the trial court to control the trial. Pertinent remarks made by a trial court in discussing the admissibility of evidence or explaining its rulings do not constitute prohibited expressions of opinion. *Starks v. Robinson*, 189 Ga. App. 168 (2) (375 SE2d 86) (1988). Under that standard, the remarks of which appellant complains were not prohibited expressions of opinion and the denial of appellant's motion for mistrial was not error.

2. Citing *Cook v. Huff*, 274 Ga. 186 (1) (552 SE2d 83) (2001), appellant contends the trial court prevented the presentation of evidence which would support a finding of undue influence. While *Cook v. Huff* holds that the range of evidence permitted to show undue influence is broad, it does not hold the rules of evidence do not apply. Appellant and his brother Lee were permitted to testify to many details of their dealings with appellee regarding probate of the will, but the trial court excluded some of their testimony and that of other witnesses as hearsay; excluded on relevancy grounds some testimony, such as that involving alleged testamentary intent developed by Testator in the years following execution of the will at issue here; and excluded appellant's offer of expert testimony on the subjects of the meaning of Testator's will and appellee's purported ethical conflicts in dealing with Testator's estate. Appellant contends the excluded evidence was within that broad range of evidence admissible to show undue influence. Appellant does not, however, show how the trial court erred in applying the rules of evidence. "Absent clear abuse, the trial court's exercise of discretion in admitting or refusing to admit evidence is entitled to deference. [Cit.]" *Kellett v. Kumar*, 281 Ga. App. 120, 124 (2) (635 SE2d 310) (2006). No such abuse of discretion has been shown here.

3. Appellant enumerates as error the trial court's denial of his request to charge the jury on the presumption of undue influence that arises where a confidential relationship existed between testator and beneficiary, with the testator being of weak mentality and the beneficiary occupying a dominant position. See *Crumbley v. McCart*, 271 Ga. 274, 275 (517 SE2d 786) (1999). In order for a refusal to charge to be error, the request must, among other requirements, be adjusted to the evidence. *Coile v. Gamble*, 270 Ga. 521 (2) (510 SE2d 828) (1999). The trial court's refusal to give appellant's requested charge on the presumption of undue influence was correct because the evidence did not show either that Testator was of "weak mentality" when the will was executed or that appellee occupied a "dominant position" with

regard to his father. In fact, the undisputed evidence was that Testator's health improved between the time he executed a will in 1995 and the execution in 1998 of the will at issue, that he remained strong-willed and stubborn, not feeble or easily confused, and he liked to be in control. The refusal to give the requested charge, therefore, was not error. Id.

4. Appellant introduced into evidence a packet of papers which the evidence shows appellee found in Testator's home after Testator had become incapacitated by his final illness. The packet consisted of a photocopy of a conformed copy of the will at issue with markings on it, a series of notes regarding specific bequests, and a letter from Testator to appellee. In the letter, Testator requested appellee, in the event Testator died before his new will could be executed, to give effect to the changes he marked on the copy of his will, whether or not it was legal to do so. The evidence showed appellee did not comply with Testator's request. At appellee's request, the trial court instructed the jury that whether appellee could have or should have complied with his father's wishes was not relevant to the issue of undue influence. Appellant objected to that charge and enumerates as error the giving of the charge.

Appellant contends the question of whether appellee should have complied with his father's wishes is relevant to the issue of undue influence because it illustrates the conduct and demeanor of the parties with respect to each other as *Cook v. Huff*, supra, permits. Appellant also attempts to connect the evidence to the issue of undue influence by characterizing appellee's inaction as a breach of fiduciary duty on account of self-interest in maintaining property in the estate to be devised to him under a will he procured for his own benefit. The nexus between appellee's failure to comply with Testator's request, according to appellant, is that both the procurement of the will and the refusal to comply with the request to ignore the will demonstrate appellee's self-interested manipulation of Testator for appellee's own benefit.

The evidence of the conduct and demeanor of the parties with respect to each other which *Cook v. Huff*, supra, found relevant was evidence relating to the time in which the alleged undue influence occurred, not to events occurring years later. Appellant has offered no applicable authority supporting the relevance to a claim of undue influence of events occurring years after the execution of the will, and we have found none. In *Barber v. Holmes*, 282 Ga. 768 (653 SE2d 448) (2007), for instance, we noted that statements by a testatrix two years after the execution of her will were not admissible to attack the will on the ground of undue influence. What is pertinent to a claim of undue influence is what occurred around the time of the execution of a will. "Undue influence sufficient to invalidate a will amounts to

deception or force and coercion operating on the testator *at the time of execution* such that the testator is deprived of free agency and the will of another is substituted for his." (Emphasis supplied.) *Holland v. Holland*, 277 Ga. 792, 793 (2) (596 SE2d 123) (2004). Nothing about appellee's non-compliance with desires Testator first expressed in 2003 is probative of whether the will executed in 1998 was the product of Testator's own will. Since the evidence at issue was not relevant to the claim of undue influence, the trial court did not err in instructing the jury to that effect.

5. Finally, appellant contends the trial court erred in granting summary judgment to appellee on the issue of revocation during the presentation of appellant's case-in-chief. In arguing the trial court was wrong procedurally in granting the motion, appellant relies on this Court's decision in *Akins v. Couch*, 271 Ga. 276 (1) (518 SE2d 674) (1999), where this Court found error in the grant of summary judgment on the morning of trial when no motion had been made and the opposing party had not been given time to respond. The present case differs significantly from *Akins v. Couch*, supra, because appellee here had previously moved for summary judgment on the ground on which it was ultimately granted, and appellant had the statutorily-mandated time to respond, and did so. The trial court initially denied the motion, but took the issue up again during the trial because resolution of the question would impact the admissibility of evidence.

> Summary judgment orders which do not dispose of the entire case are considered interlocutory and remain within the breast of the court until final judgment is entered. They are subject to revision at any time before final judgment unless the court issues an order "upon express direction" under OCGA § 9-11-54 (b).

(Citation and punctuation omitted.) *Canoeside Properties v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003). There was, therefore, no procedural impediment to the trial court's grant of the motion.

The substantive issue regarding revocation was whether Testator's act in 2003 of marking on a copy of his 1998 will the changes he wanted made in a new will constituted a revocation of the 1998 will. OCGA § 53-4-44, which was enacted in 1996 and became effective January 1, 1998, provides as follows:

> An express revocation may be effected by any destruction or obliteration of the will done by the testator with an intent to revoke or by another at the testator's direction. The intent to

revoke shall be presumed from the obliteration or cancellation of a material portion of the will, but such presumption may be overcome by a preponderance of the evidence.

Prior to the enactment of that statute, the question of revocation by destruction or obliteration of a material portion of a will was controlled by OCGA § 53-2-74, which provided in pertinent part that "[a]n express revocation may be effected by any destruction or obliteration of [the] original will or a duplicate . . . , done by the testator or by . . . his direction with an intention to revoke . . . ." The difference between "the will" in the current version of the statute and "the original will or a duplicate" in the former statute is the point on which the grant of summary judgment was based.[1] Appellee contended, and the trial court agreed, that the change in the statutory language precludes the presumption of intent to revoke if the change is not made on the original will signed by the testator. Appellant argues, as he did at trial, that the change in the statute was immaterial and effected no change in the previous law to the effect that a revocation could result from an obliteration on a duplicate of a will. Although no appellate decision on the question appears, a commentator has opined that the change means the presumption of intent to revoke arises only from destruction or obliteration of the original will:

> The former Code allowed the act of destruction or revocation to be performed on the will "or a duplicate thereof." Former OCGA § 53-2-74 (GCA § 113-404). The use of the term "duplicate" was the source of some confusion until the Supreme Court clarified that the term refers to any copy of the will, whether the copy is signed or not. [Cit.] . . . The current Code provision does not include any reference to a "duplicate." Thus, a revocation may be effected only by a destruction or obliteration of the actual will.

1 Redfearn Wills and Administration in Georgia (6th ed. 2000), § 5-15, Revocation by Destruction or Obliteration, pp. 108-109, fn. 1. Upon reflection, we agree with the treatise that the change in the statute means the presumption of revocation arises only when a material portion of the original will suffers obliteration or destruction. In *Horton v. Burch*, 267 Ga. 1 (471 SE2d 879) (1996), the case cited in Redfearn, supra, this Court discussed the breadth of the provision for

---

[1] No argument is made that the obliterations were not material or that the presumption, if it arose, could have been rebutted, and appellant's counsel agreed that if the presumption of revocation did not arise, summary judgment on the issue of revocation was proper.

revocation in OCGA § 53-4-44 and noted the confusion that arises from the use of the term "duplicate original" and from the practice of having testators execute, with all formalities, multiple copies of their will. Interpreting the statute as the trial court did and as is set forth in Redfearn alleviates such problems by providing a bright-line rule that the presumption arises only by destruction of the original or by obliteration of a material portion of the original. Accordingly, we conclude the trial court was correct in ruling that the obliteration involved here, not being made on the original will, did not raise the presumption of revocation. Since that presumption was essential to appellant's claim of revocation, the trial court did not err in granting summary judgment to appellee on that claim.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2008.

*Caldwell & Watson, Floyd E. Propst III, Harmon W. Caldwell, Jr., Robert S. Carlson, Harry W. MacDougald*, for appellant.

*Paul, Hastings, Janofsky & Walker, Robert M. Martin, Joseph Gardner III*, for appellee.